Alvin MATZKE, William Leonard, Janice Stoss, Don Lorlovick, Delmar Turley, and Cheryl Turley, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

John BLOCK, Individually and in his capacity as Secretary of Agriculture, United States Department of Agriculture; Allen Brock, Individually and in his capacity as Deputy Administrator and former Acting Administrator of the Farmers Home Administration; Charles Shuman, Individually and in his capacity as Administrator of the Farmers Home Administration; Larry Davis, Individually and in his capacity as State Director for Kansas Farmers Home Administration, United States Department of Agriculture, Defendants.

Civ. No. 82–1075.

United States District Court,
D. Kansas.

May 21, 1982.

Donald B. Clark, Wichita, Kan., Fred G. Brown and Thomas D. Kershal Jr., American Constitutional Rights Association, Klamath Falls, Or., for plaintiffs.

Jackie Williams, Asst. U. S. Atty., Wichita, Kan., Robert L. Purcell and Dick Sherbondy, U. S. Dept. of Agriculture, Kansas City, Mo., for defendants.

## MEMORANDUM AND ORDER

CROW, District Judge.

Plaintiffs Alvin Matzke, William Leonard, Janice Stoss, Donald Lorlovick, Delmar Turley and Cheryl Turley are seeking preliminary and permanent injunctive relief and declaratory relief for themselves and other similarly situated Kansas farmers against John Block, Secretary of Agriculture, United States Department of Agriculture and the Administrator and other subordinate officials of the Farmers Home Administration, a government agency. Plaintiffs are recipients of farmer program loans administered by the Farmers Home Administration (FmHA) under the Consolidated Farm and Rural Development Act, Pub.L. No.87–128, 75 Stat. 307 (codified as amended in scattered sections of 7 U.S.C.).

The plaintiffs allege the Secretary and the FmHA accelerated delinquent loan accounts and made demand for payment without affording due process of law under the Fifth Amendment. Further, plaintiffs allege the Secretary and the FmHA have refused, and are refusing to implement the provisions of 7 U.S.C.A. § 1981a (West Supp.1982) (loan moratorium and policy on foreclosure). As a result, plaintiffs may lose the tools of their trade, their home places or their livestock because of government foreclosure and liquidation of FmHA secured property. In short, plaintiffs livelihoods are at stake.

On April 5, 1982, plaintiffs requested preliminary injunctive relief pursuant to Rule 65(a), Fed.R.Civ.P. The issue was briefed by the attorneys for plaintiffs and for the government, and oral arguments were heard on behalf of the parties on April 30, 1982. Janice W. Stoss, a plaintiff, testified at the hearing. Another plaintiff, Donald D. Lorlovick, provided a handwritten affidavit to the court. Four other witnesses who are not named parties testified: Wayne Leonard, Vernon Patten, Kent Ochsner and Lloyd Howard. After a careful review of the authorities, arguments, and testimony, the court is now ready to rule on the motions. The court grants the application for preliminary injunction of Janice W. Stoss, subject to the conditions stated in the order. The court denies the application for preliminary injunction of Donald D. Lorlovick.

Evidence of a right to injunctive relief sought because of irreparable injury which will result if it is not granted was not produced as to any of the other named parties. Therefore, the application for preliminary injunctive relief on behalf of all other parties who did not testify either in person, or by affidavit, is denied at this time.

The court will not determine an application for preliminary injunction on behalf of non-party witnesses. The government had no notice of who would be present and testifying as witnesses and was not able to prepare its defense. Therefore, non-party witnesses are not eligible for preliminary injunctive relief until they are made a party to the litigation.

This action has not been certified as a class action pursuant to Rule 23, Fed.R. Civ.P. Class-wide injunctive relief will not be considered until a certified class exists. Even assuming it were certified as a 23(b)(2) class, the rule provides for "final injunctive relief" rather than preliminary injunctive relief as was requested in this hearing.

### Testimony of the Parties

Janice W. Stoss of Otis, Kansas is a Barton County farmer and rancher. The FmHA made economic emergency and operating loans to Ms. Stoss under the Consolidated Farm and Rural Development Act in the following amounts: $225,000 in 1978, $23,950 in 1979 and $8,500 in 1980. The loans are secured by real estate, farm machinery and cattle belonging to Ms. Stoss. The FmHA also provides management assistance to loan recipients.

The purpose of an economic emergency loan is to enable farmers or ranchers to continue operating during economic stress caused by the unfavorable relationship between production costs and prices received for agricultural commodities. 7 C.F.R. § 1945.102 (1980). The purpose of an oper-

ating loan is to provide credit and management assistance for limited resource, new or low income farmers in order to enable them to improve living conditions and economic situations to the point when they can obtain private credit. 7 C.F.R. § 1941.2 (1980).

It is undisputed that Ms. Stoss fell behind in her repayment schedule to the FmHA. On February 12, 1981, Ms. Stoss received a notice of acceleration and demand for payment from the FmHA. A copy of the notice is appended to this decision as "Appendix A." The notice contains no reference to the moratorium provision of the Agricultural Credit Act of 1978, 7 U.S.C.A. § 1981a (West Supp.1982). Ms. Stoss testified the reasons she became delinquent in her account were that her county supervisor failed to process her loan applications in time for planting, refused to permit her to employ a hired-hand, refused to let her repair farm machinery and refused to let her sell non-breeding heifers from her herd. Ms. Stoss testified that mismanagement of FmHA supervisors decreased her ability to farm. By a letter dated April 23, 1982, from her county supervisor, Ms. Stoss was denied further loan assistance from the FmHA. The specific reasons given were that the FmHA was contacted by the Barton County Humane Society on January 27, 1982 about the poor condition of plaintiff's cattle, plaintiff's crop farming was not done in a timely fashion to maximize production, plaintiff had not been able to generate enough income to pay her debts and plaintiff's loan account with FmHA was delinquent. Ms. Stoss testified that she had contacted the Barton County Humane Society herself in an attempt to convince the FmHA of her need for money for feed. Thirty-five head were lost due to lack of feed. She also stated she could not farm in a timely manner because she couldn't get funds from the FmHA at the optimum time for planting. Ms. Stoss exercised her appeal rights under regulations promulgated by the Department of Agriculture, 7 C.F.R. § 1900.51–.54 (1980). The record of her appeal was not provided to the court, nor did the government rebut her testimony. Ms. Stoss requested deferral on principal and interest but it was denied without consideration of the moratorium provision, § 1981a, so far as the record now before the court reveals. A civil action has been filed in federal court to foreclose on her account based on promissory notes and security agreements held by the government. Ms. Stoss testified that the notice of acceleration impaired her ability to obtain short term credit which a farmer must have to operate.

Donald D. Lorlovick is a Stanton County, Kansas farmer. In his affidavit to the court, Mr. Lorlovick states he received an operating loan in 1978 and an emergency loan in 1979. Due to adverse weather conditions, Mr. Lorlovick fell behind in his loan repayment. The FmHA accelerated his loans and made demand for payment without affording moratorium relief. He further alleges FmHA did not provide adequate supervision and did not disburse money in a timely fashion, thereby causing a crop loss. The records of Mr. Lorlovick's appeal of his acceleration, if any was taken, were not provided to the court, nor did the government rebut the testimony contained in the affidavit.

### Testimony of Witnesses

The court accepts the testimony of plaintiffs' witnesses for the purpose of evaluating the substantiality of plaintiffs' claims and the likelihood that plaintiffs will eventually be entitled to the relief sought after a trial on the merits.

Wayne A. Leonard of Alma, Kansas has been successfully farming for 15 years. He obtained an operating loan and an emergency loan, secured by his machinery, livestock and crops, through the FmHA. Due to drought conditions, Mr. Leonard became delinquent in his loan repayment on January 1, 1981. Through its county supervisor, the FmHA sent a notice of acceleration and demand for payment on October 10, 1981. Subsequently, Mr. Leonard filed a petition in bankruptcy in the United States Bankruptcy Court. Mr. Leonard testified he was told by his county supervisor that the moratorium relief only applied to farm housing loans and not to farmer program loans.

Vernon Patten of Wooster, Kansas has been a farmer for 20 years. He obtained an FmHA operating loan in 1979 and gave a security interest in his farm machinery and crops. On May 27, 1980, Mr. Patten received a letter from the State Director of the FmHA informing him of unauthorized sales of crops in violation of his security agreement with FmHA. Mr. Patten's loans were accelerated and Mr. Patten testified he did not receive notice of moratorium relief.

Kent Ochsner of Sharon Springs, Kansas has farmed for 12 years and has lived on a farm all his life. Mr. Ochsner received an operating loan for the purchase of equipment financed through the FmHA. In 1981, Mr. Ochsner had difficulty making his loan repayment due to ill health. He requested loan deferral and it was denied. At the suggestion of the FmHA, Mr. Ochsner liquidated by auctioning his equipment and applying monies received to his loan balance. Mr. Ochsner did not know of any appeal process for the denial of deferment.

Mr. Lloyd Howard of Douglas, Kansas received conservation loans, emergency loans and real estate loans through the FmHA. Due to 5 consecutive bad crop years, Mr. Howard fell behind on his real estate loan, although he managed to keep current on his repayment of the other loans. Mr. Howard received a notice of acceleration and demand for payment dated July 21, 1981. Mr. Howard testified he was never offered moratorium relief or told of its existence.

### Findings of Fact

1. Federal farm loan assistance programs, such as those administered by the FmHA, are directed toward the benefit of the farmer and toward the ultimate welfare of society. The FmHA administers loan assistance programs through the Consolidated Farm and Rural Development Act, Pub.L.No.87–128, 75 Stat. 307 (codified as amended in scattered sections of 7 U.S.C.). The farmer program loans under this act include farm ownership loans, operating loans and emergency loans. The purpose of the program is described in congressional reports accompanying the Agricultural Credit Act of 1978, Pub.L.No.95–334, 92 Stat. 427.

> Historically, the primary mission of the Farmers Home Administration has been to help farmers with limited resources become successfully established in agriculture. It also assists farmers with loans to keep them in business by refinancing, restructuring debts and recouping losses caused by disasters.

1978 U.S.Code Cong. & Ad.News 1106, 1127. The FmHA provides credit to farmers through direct loans from appropriations, insured loans from funds supplied by purchasers of government certificates and guaranteed loans from private lenders. Id. at 1125. Farmers are expected to repay the loans and the FmHA is authorized to enter into security agreements whereby land, buildings, machinery, equipment and inventories are used as collateral to secure the loans. 7 C.F.R. §§ 1941.19, 1943.19 & 1945.-69 (1980).

2. The general account servicing policy of the FmHA provides that

> [b]orrowers are expected to pay their debts to the Farmers Home Administration (FmHA) in accordance with their agreements and ability to pay. They will be encouraged to pay ahead of schedule, consistent with sound financial management. When borrowers have acted in good faith and have exercised diligence in an effort to pay their indebtedness but cannot pay on schedule because of circumstances beyond their control, servicing actions will be consistent with the best interests of the borrower and the Government.

7 C.F.R. § 1951.2 (1980).

3. The Consolidated Farm and Rural Development Act, Pub.L.No.87–128, 75 Stat. 307, was amended by the Agricultural Credit Act of 1978, Pub.L.No.95–334, § 122, 92 Stat. 427. A moratorium provision was added to clarify the Secretary's authority to grant moratoriums for payment of principal and interest, and forego foreclosure on FmHA loans. The section provides that

[i]n addition to any other authority that the Secretary may have to defer principal and interest and forego foreclosure, the Secretary may permit, at the request of the borrower, the deferral of principal and interest on any outstanding loan made, insured, or held by the Secretary under this chapter, or under the provisions of any other law administered by the Farmers Home Administration, *and may forego foreclosure of any such loan, for such period as the Secretary deems necessary upon a showing by the borrower that due to circumstances beyond the borrower's control, the borrower is temporarily unable to continue making payments of such principal and interest when due without unduly impairing the standard of living of the borrower.* The Secretary may permit interest that accrues during the deferral period on any loan deferred under this section to bear no interest during or after such period: Provided, that if the security instrument securing such loan is foreclosed such interest as is included in the purchase price at such foreclosure shall become part of the principal and draw interest from the date of foreclosure at the rate prescribed by law (emphasis supplied).

7 U.S.C.A. § 1981a (West Supp.1982).

4. The FmHA response to requests for moratorium assistance was described by a farmer program specialist in the following terms:

Q. What has been FmHA's response, just as a general statement?

A. O.K., well, as a general statement I think it's indicated in some of those letters, *we presently do not have the authority to grant a moratorium.* We've advised the families that have made this request that we can reschedule, reamortize, defer, combine loans in particular cases upon their request and if we feel upon development of a plan to show repayment ability, and dependent upon our security position and the families cooperation, we would consider rescheduling, reamortizing or deferring (emphasis supplied).

The government's position is that "the Secretary has not and does not intend to issue a unilateral moratorium on FmHA farm foreclosures." Defendant's Brief in Opposition to Plaintiff's Motion for Preliminary Injunction, Dkt. # 14, p. 4.

5. Janice W. Stoss is under imminent threat of liquidation of secured property, including real estate, farm machinery and livestock. The notice of acceleration received by Ms. Stoss impaired her ability to obtain short term credit from private sources. Ms. Stoss has exhausted her administrative remedies and unless this injunction issues, she will lose her real property, chattels and livestock. She would not be able to continue in business.

6. Donald D. Lorlovick filed a petition in bankruptcy. The property of the debtor is subject to the jurisdiction of the United States Bankruptcy Court which enforces an automatic stay of other debt collection proceedings. 11 U.S.C.A. § 362 (West Supp. 1979). This procedure will protect the debtor's interests until all claims related to the assets of the debtor's estate are resolved.

Conclusions of Law

1. This is a controversy alleging violation of rights arising out of the Fifth Amendment and 7 U.S.C.A. § 1981a (West Supp.1982). Subject matter jurisdiction is predicated on 28 U.S.C.A. § 1331(a). The Administrative Procedure Act, 5 U.S.C.A. § 702, provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." The court finds no statute that specifically precludes review of this matter, therefore jurisdiction is found under the Administrative Procedure Act (APA). *See, e.g., City and County of Denver v. Bergland,* 517 F.Supp. 155, 177 (D.Colo.1981); *Law v. United States Department of Agriculture,* 366 F.Supp. 1233, 1235–36 (N.D.Ga.1973).

2. The standards for a preliminary injunction request are established by federal case law. It is often stated by the

courts that an injunction is an extraordinary or drastic remedy that should not be granted except upon a clear showing. *Penn v. San Juan Hospital, Inc.*, 528 F.2d 1181 (10th Cir. 1975); 11 Wright & Miller, Federal Practice and Procedure: Civil § 2948 (1973). Injunctive relief which would frustrate a congressional mandate should not be granted. *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938). However, the court has authority to review the procedures employed in reaching an administrative decision. *See, e.g., Boyd v. Secretary of Agriculture*, 459 F.Supp. 418 (D.S.C.1978).

■ The purpose of a preliminary injunction is two-fold: it protects the plaintiff from irreparable injury and it preserves the court's ability to decide the case on the merits. *See, e.g., Penn, supra* at 1185; 11 Wright & Miller, Federal Practice and Procedure: Civil § 2947 (1973). The standards by which an application for preliminary injunctive relief are evaluated by the court were recently reviewed in *Coe v. Safeway Stores, Inc.*, No. 82–1295, unpublished decision (D.Kan. May 6, 1982).

> The prerequisites for granting a preliminary injunction are well established. The Tenth Circuit recently reviewed these standards, and their application, in *Lundgrin v. Claytor*, 619 F.2d 61 (10th Cir. 1980):
>
> > In defining what a movant must show to support the grant of a preliminary injunction, we have said:
> >
> > > In hearings upon motions for temporary or preliminary injunctive relief, the burden is upon the one requesting such relief to make a prima facie case showing a reasonable probability that he will ultimately be entitled to the relief sought. The applicant has the additional burden of showing a right to the specific injunctive relief sought because of irreparable injury that will result if the injunction is not granted. There must exist a probable right and a probable danger.

*Crowther v. Seaborg*, 415 F.2d 437, 439 (10th Cir. 1969). This test has often been expanded into four prerequisites which the moving party must establish: (1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest (citations omitted).

The Tenth Circuit has further refined the standards for granting a preliminary injunction by adopting a liberal definition of the "probability of success" prerequisite in appropriate cases. Where movant satisfies the other prerequisites:

> [I]t will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation.

*Continental Oil Co. v. Frontier Refining Co.*, 338 F.2d 780, 781–82 (10th Cir. 1964) (citing *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953)).

3. Rule 65, Fed.R.Civ.P., provides the procedural framework for the preliminary injunction. No preliminary injunction may issue without notice to the adverse party and without the giving of security, in such sum as the court deems proper, for payment of costs or damages suffered by a party who is found to have been wrongfully enjoined. Rule 65(a) & (c), Fed.R.Civ.P. In addition, an order granting an injunction shall set forth the reasons for its issuance, shall be specific in terms and shall describe in reasonable detail the acts to be restrained. Rule 65(d), Fed.R.Civ.P.

■ 4. Plaintiff Donald D. Lorlovick is not faced with the threat of irreparable injury if the injunction is not issued. He

has availed himself of the judicial protection of the United States Bankruptcy Court and, therefore, is not in need of the drastic remedy of a preliminary injunction.

5. The court finds that Janice W. Stoss will suffer irreparable injury if this preliminary injunction does not issue. There is a substantial likelihood that her property will be liquidated before a decision on the merits can be rendered by the court. She will lose her land, machinery and cattle and will be unable to continue in business. Granting the preliminary injunction will preserve the status quo until the merits of her claim can be decided.

6. A preliminary injunction to prevent foreclosure on the loans of Janice W. Stoss would not be adverse to the public interest. The publicly declared purpose of the FmHA loan program is "to help farmers with limited resources become successfully established" and "to assist farmers with loans to keep them in business." 1978 U.S.Code Cong. & Ad.News, 1106, 1127. Foreclosure will permanently negate that purpose as to this plaintiff, whereas a preliminary injunction will allow her to continue in business during the pendency of this litigation.

7. The court finds that Janice W. Stoss does not have an adequate remedy at law. The government contends that she may raise constitutional or statutory irregularities as affirmative defenses in the foreclosure litigation. The injury begins when a borrower receives a notice of acceleration which results in an inability to obtain short term credit in the local community. (Testimony of Stoss). It culminates in the seizure and liquidation of property. Therefore, by the time of the foreclosure suit, a borrower may be out of business already or considering bankruptcy. Thus, the remedy of raising these issues in the foreclosure suit is plainly inadequate.

 8. In an action for a preliminary injunction the court must determine whether there is a substantial likelihood the plaintiff will prevail on the merits. The court's

scope of review of the administrative action is limited to whether the questioned action was arbitrary, capricious or an abuse of discretion. 5 U.S.C.A. § 706(2)(A). In *Sabin v. Butz*, 515 F.2d 1061 (10th Cir. 1975), the Tenth Circuit discussed the standard of review under this statute.

> Review under this provision [§ 706(2)(A)] of the A.P.A. provokes the inquiry whether the administrative decisions were based on a consideration of all the relevant factors and whether there was a clear error of judgment. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814 [823], 28 L.Ed.2d 136. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency. Id. The court's function is exhausted where a rational basis is found for the agency action taken (citations omitted).

Id. at 1067. Therefore, the task of this court is to determine whether the applicant has a substantial likelihood of showing the withholding of moratorium relief was arbitrary and capricious, or an abuse of discretion.

 9. Janice W. Stoss has a substantial likelihood of prevailing on the merits of her case based on the record presently before the court. The decision whether or not to grant moratorium relief, including deferral of principal and interest and foregoing foreclosure, is committed to agency discretion by law. The statute provides that the Secretary "may permit" deferral of principal and interest, and "may forego foreclosure" of such loans. 7 U.S.C. § 1981a (West Supp.1982). Such use of the word "may" in a statute indicates that the decision is committed to the discretion of the Secretary. *Berends v. Butz*, 357 F.Supp. 143, 150 (D.Minn.1973). However, the inquiry does not end there. When there is law to apply to the exercise of discretion, and where issues are raised as to whether the agency action was arbitrary or an abuse

of discretion, then the court must review the action. *Sabin v. Butz*, 515 F.2d 1061 (10th Cir. 1975).

The Secretary is authorized to "forego foreclosure" and to defer principal and interest by § 1981a upon a showing of two factors: (1) the borrower is temporarily unable to continue making payments due to circumstances beyond the borrower's control, and (2) the borrower's standard of living will be unduly impaired by having to make such payments when due. The record does not reflect that any consideration was ever given to circumstances beyond Ms. Stoss' control. Ms. Stoss testified her default was caused by mismanagement of the FmHA, circumstances which, if true, would be beyond her control. Nor does the record reflect that any consideration was ever given to the effect upon her standard of living of having to make payments when due. Therefore, it appears the decision not to defer principal and interest or forego foreclosure was not based on consideration of the relevant factors. Further, the testimony of the government witness is to the effect that there is no authority to grant a moratorium in the farmer loan program. The Secretary is free to consider additional relevant factors which bear a rational relationship to the statutory factors, however, at a minimum, the circumstances of the delinquency and the standard of living of the borrower must be considered in reaching a decision to grant or deny moratorium relief. This is a ministerial function as opposed to a discretionary function.

When discretion is vested in an administrative agency, the refusal to exercise that discretion is itself an abuse of discretion. In *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954), the United States Supreme Court stated:

> [I]f the word 'discretion' means anything in a statutory or administrative grant of power, it means that the recipient must exercise his authority according to his own understanding and conscience.

*Id.* at 266–67, 74 S.Ct. at 502–03. *See also* 2 Fed.Proc., L.Ed. § 2:217 (1981). In *Berends, supra*, the Secretary of Agriculture unilaterally terminated an emergency loan program in a federally declared disaster area. The court held the termination was in excess of statutory authority. 357 F.Supp. at 151. The court noted:

> It may be that the Secretary questions the efficacy of the emergency loan program. It is not the role of the Courts to pass upon the necessity or soundness of a duly-promulgated law; likewise, an administrator should not engage in such a practice. It is the duty of the Courts to interpret the law and it is the function of the Administrator to enforce and effectuate the laws passed by Congress.

357 F.Supp. at 156.

Upon the *record presently before the court*, and not deciding the ultimate issues in the case, the defendant has failed to follow the mandate of the statute to *consider* foregoing foreclosure of any loan upon: "a showing by the borrower that due to circumstances beyond the borrower's control the borrower is unable to continue making payments of such principal and interest when due without unduly impairing the standard of living of the borrower." The defendant must follow the Congressional direction. The present record does not reflect the defendant has done so.

IT IS THEREFORE ORDERED THAT John Block, Secretary of Agriculture, his officers, agents and employees, and those in active concert with him who receive actual notice of this order by service or otherwise, are hereby enjoined during the pendency of the lawsuit before this court from foreclosing upon the land, chattels or livestock of Janice W. Stoss pursuant to security agreements held by the FmHA.

IT IS FURTHER ORDERED THAT this injunction will be dissolved upon a showing that the Department of Agriculture and the FmHA have been brought into compliance with 7 U.S.C.A. § 1981a and the order of this court.

IT IS FURTHER ORDERED THAT this injunction in no way impairs valid liens of the FmHA. Janice W. Stoss is directed to maintain the collateral and avoid economic waste. If it should become necessary to sell or otherwise dispose of any collateral, the plaintiff, Stoss, must obtain written permission of the FmHA. If collateral is sold, leased or rented the proceeds must be deposited with the clerk of the court.

IT IS FURTHER ORDERED THAT plaintiff give bond to be approved by the court in the amount of five thousand dollars ($5000) conditioned that plaintiff abide by the order of this court and pay all damages and costs that may be incurred or suffered by any party who is found to be wrongfully enjoined. A good and sufficient bond must be submitted on or before June 14, 1982.

# APPENDIX A

USDA-FmHA
Form FmHA 455-21
(Rev. 10-15-79) NOTICE OF ACCELERATION AND DEMAND FOR PAYMENT

To: __Janice W. Stoss_____ and_____

Address: __Box 115, Otis, Kansas 67565_____

Our records show that you owe to the Farmers Home Administration (FmHA) an __Operating and Economic Emergency__

loan indebtedness of $ __29,427.82__ principal and $ __1,872.54__ unpaid interest calculated to

__February 17, 1981__ , plus interest accruing from that date.
 *(Date)*

Since you are in default in connection with this indebtedness by __$17,969.64__

_____

 *(Reason)*

such indebtedness is hereby declared immediately due and payable unless it already is past due, and demand is hereby made

on you for payment thereof within __15__ days from the date of this letter. If within that period of time you do not pay such indebtedness or make satisfactory arrangements to do so it will be necessary for me to recommend referral of this claim to the United States Attorney for appropriate action to collect.

If after the last date of this notice you submit to FmHA any payment insufficient to pay the entire indebtedness or insufficient to comply with any arrangements agreed to between FmHA and yourself, then payments WILL NOT CANCEL the effect of this notice. If such insufficient payments are received and credited to your account, no waiver or prejudice to any rights which the Government may have for breach of any promissory note or covenant in a security instrument will result and FmHA may proceed as though no such payment had been made.

HOWEVER, YOU HAVE THE OPPORTUNITY TO HAVE A MEETING BEFORE THIS FORECLOSURE TAKES PLACE. If you wish to make use of this opportunity to meet because you believe that the United States is in error in accelerating your account(s) and proceeding with the foreclosure, you should IMMEDIATELY contact the District Director of the Farmers Home Administration in writing at the following address:

__620 E. 30th St., Hutchinson, Kansas 67501_____

You should set out all the information you believe should be considered by the Farmers Home Administration. You may also request to appear in person to present your information. The District Director will arrange a mutually convenient time for such a meeting. The District Director will also inform you of the location of the meeting.

This represents only the debt that is on livestock and machinery. You will hear about the acceleration of the first loan from the State Office.

Sincerely yours,

County Supervisor
Farmers Home Administration

__February 12, 1981__ __Post Office Box 697, Lyons, Ks. 67554__
 *(Date)* *(County Office Address)*

 __1-316-257-5149__
 *(County Office Telephone Number)*

PLAINTIFF'S EXHIBIT C

☼ U S GPO:1979-0-665-116/157 *Position 2* FmHA 455-21 (Rev. 10-15-79)