Alvin **MATZKE, et al., Plaintiffs,**

v.

**John BLOCK, Individually and in his capacity as Secretary of the United States Department of Agriculture; et al., Defendants.**

No. 82–1075.

United States District Court, D. Kansas.

May 6, 1983.

Donald B. Clark, Wichita, Kan., Thomas D. Kershaw, Jr., American Constitutional Rights Ass'n, Klamath Falls, Or., for plaintiffs.

Jim J. Marquez, U.S. Atty., Jackie Williams, Asst. U.S. Atty., Wichita, Kan., Dick Sherbondy, U.S. Dept. of Ag., Office of Gen. Counsel, Kansas City, Mo., for defendants.

## MEMORANDUM AND ORDER

CROW, District Judge.

Plaintiffs are seeking injunctive relief and declaratory relief for themselves and other similarly situated Kansas farmers against John Block, Secretary of Agriculture and the Administrator and other subordinate officers of the Farmers Home Administration (FmHA), an agency of the United States. The class of plaintiffs consists of

[a]ll persons in Kansas who have farm operating, ownership, or emergency loans financed under the Consolidated Farm and Rural Development Act, P.L. 87–128 whose loans were, are or will be held by the Farmers Home Administration of the United States Department of Agriculture, and whose farm loans have been foreclosed, are in foreclosure, and who shall be foreclosed upon.

*Matzke v. Block,* No. 82–1075, unpublished order (D.Kan. Jan. 14, 1983). The court's jurisdiction is based upon 28 U.S.C. § 1331 or § 1361.

Plaintiffs allege the Secretary and the FmHA accelerated delinquent loan accounts and made demand for payment without affording due process of law under the Fifth Amendment. Plaintiffs further allege that the Secretary illegally refuses to provide administrative due process hearings to delinquent borrowers contrary to the express intention of Congress under the Agricultural Credit Act of 1978, Pub.L. No. 95–334, § 122, 92 Stat. 427 (codified at 7 U.S.C. § 1981a) [hereinafter referred to as section 1981a]. Section 1981a amended the authority of the Secretary of Agriculture under the Consolidated Farm and Rural Development Act, Pub.L. No. 87–128, 75 Stat. 307 (1961) (codified as amended at 7 U.S.C. §§ 1921 et seq.) Section 1981a provides

[i]n addition to any other authority that the Secretary may have to defer principal and interest and forego foreclosure, the Secretary may permit, at the request of the borrower, the deferral of principal and interest on any outstanding loan made, insured, or held by the Secretary under this chapter, or under the provisions of any other law administered by the Farmers Home Administration, and may forego foreclosure of any such loan, for such period as the Secretary deems necessary upon a showing by the borrower that due to circumstances beyond the borrowers control, the borrower is temporarily unable to continue making payments of such principal and interest when due without unduly impairing the standard of living of the borrower. The Secretary may permit interest that accrues during the deferral period on any loan deferred under this section to bear no interest during or after such period: Provided, that if the security instrument securing such loan is foreclosed such interest as is included in the purchase price at such foreclosure shall become part of the principal and draw interest from the date of foreclosure at the rate prescribed by law.

7 U.S.C. § 1981a.

The government's position is that the statute in question merely clarifies the Secretary's authority to grant deferrals of principal and interest without requiring the implementation of a loan moratorium program. Further, the government contends that section 1981a should be construed so as to leave the Secretary free to choose whether to implement a program under the statute.

The case is presented for decision on countermotions for summary judgment. The parties previously introduced testimony and exhibits in a motion for preliminary injunction heard on April 30, 1982, see *Matzke v. Block,* 542 F.Supp. 1107 (D.Kan. 1982) [hereinafter referred to as *Matzke I*], and in a motion for class certification heard on November 8, 1982, see *Matzke v. Block,* No. 82–1075, unpublished order (D.Kan. Jan. 14, 1983). Viewing the evidence in this

case in the light most favorable to the government, the court finds that there are no issues of material fact in dispute, and that plaintiffs are entitled to summary judgment as a matter of law. Accordingly, plaintiffs' motion for summary judgment is sustained and defendant's motion for summary judgment is overruled. The findings which support this decision are fully set out below.

In the interests of brevity, the court will dispense with a description of the mission of the Department of Agriculture and the FmHA in the administration of farm credit programs. The parties are familiar with the record and the interested reader is referred to descriptions contained in *Curry v. Block,* 541 F.Supp. 506, 509–14 (S.D.Ga. 1982); *Matzke I,* supra at 1111–12 and J. Juergensmeyer and J. Wadley, 1 Agricultural Law § 14–3 (1982).

This is a class action alleging refusal of the Secretary of Agriculture (Secretary) to implement a loan moratorium program pursuant to section 1981a. Defendant contends that the statute vests discretion in the Secretary to determine what loan servicing options should be extended to delinquent FmHA-borrowers. Defendant's Memorandum Brief in Support of Motion for Summary Judgment, Dk. # 52 filed February 15, 1983, at pp. 1–5. Defendant further contends that the administration of farmer program loans requires close supervision by county supervisors who apply their expertise to individual circumstances in order to determine whether deferral is warranted under existing authority. Defendant's Memorandum Brief in Support of Motion for Summary Judgment, Dk. # 52, filed February 15, 1983, at p. 13. Defendant also argues that informal decision-making at the county and state level of the agency is essential to the operation of the program because loans are based on farm plans developed at the local level, loans often involve complex security agreements and frequent visits are made by county supervisors to program borrowers. *Id., See also* Defendant's Response to Plaintiffs' Motion for Summary Judgment, Dk. # 53, filed March 7, 1983, at p. 4.

■ Defendant's arguments are misplaced. The court previously recognized that the decision whether to defer principal and interest pursuant to section 1981a is discretionary. *Matzke I,* 542 F.Supp. at 1114. The essence of the government's argument is that the Secretary's discretionary authority is non-reviewable. See Saferstein, Non-reviewability: A Functional Analysis of 'Committed to Agency Discretion,' 82 Harv.L.Rev. 367, 380 (1968). However, the crux of plaintiffs' complaint is that the Secretary has a clear statutory duty to afford administrative due process consisting of notice and an opportunity to be heard prior to exercising his discretion. The issue of the administrative procedures used by the agency is separable from the issue of what review, if any, is available for the ultimate decision whether to grant a deferral. *Id.* at 395. That issue is not before the court in this litigation. Agency expertise does not weigh in favor of non-reviewability simply because the court is being asked to compare the performance of the agency with the statutory and constitutional framework to determine whether the actions complained of are indeed within the scope of discretion which Congress granted to the agency. Informal decision-making is not a sufficient reason, by itself, to preclude review.

■ The court has not been directed to any statute which precludes review of the agency decision, nor is the statute involved drawn in such broad terms that there is no law to apply. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 410, 416, 91 S.Ct. 814, 820, 823, 28 L.Ed.2d 136, 150 (1971). Neither do we interpret the permissive language of section 1981a as an express prohibition of review. *See Barlow v. Collins,* 397 U.S. 159, 165–66, 90 S.Ct. 832, 836–37, 25 L.Ed.2d 192, 198–99 (1970). Therefore, the court will look to the Administrative Procedure Act (APA) for guidance. *Diamond Ring Ranch, Inc. v. Morton,* 531 F.2d 1397, 1406 (10th Cir.1976).

■ The APA provides that "[a] person suffering legal wrong because of agency

action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The court's scope of review is governed by 5 U.S.C. § 706(1), which provides

[t]o the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall

(1) compel agency action unlawfully withheld or unreasonably delayed . . . .

The appropriate review of agency inaction under section 706(1) of the APA consists of analysis of either of two issues: (1) whether the agency violated its statutory mandate by failing to act, or (2) whether the agency's delay in acting is unreasonable. *Environmental Defense Fund v. Costle,* 657 F.2d 275, 283 (D.C.Cir.1981). *See also Health Systems Agency of Oklahoma v. Norman,* 589 F.2d 486, 492 (10th Cir.1978). Since there is no allegation of unreasonable delay, the court will consider whether the agency violated a statutory mandate by failing to act.

The inquiry which the court must make under section 706(1) of the APA is the same as for an action in mandamus under 28 U.S.C. § 1361. *See Carpet, Linoleum & Resilient Tile Layers, Local Union No. 419 v. Brown,* 656 F.2d 564, 567 (10th Cir.1981). The court must study the statute and relevant legislative history to determine whether statutory standards exist delimiting the scope or manner in which agency discretion is to be exercised. *Id.* at 566. If the court concludes that the defendant officials failed to discharge a duty that Congress intended them to perform, the court should compel performance. *Id.* Although the foregoing standards were formulated by the Court of Appeals for the Tenth Circuit in the context of reversing an order of dismissal, the court finds that they set forth a proper standard of review for agency inaction under 5 U.S.C. § 706(1).

■ The Department of Agriculture and the FmHA have taken a definite position that section 1981a has not and need not be implemented. Defendant's Memorandum, Dk. # 53, filed March 7, 1983, at p. 6. Government exhibit # 30 is a letter introduced into evidence from a FmHA official to one of the named plaintiffs denying any authority under section 1981a to grant a moratorium. During the class certification hearing, Mr. Charles W. Ladner, Chief, Farmer Programs for the State of Kansas, testified section 1981a had not been implemented by the Secretary.[1] There is some

---

1. (Cross-examination of Mr. Charles W. Ladner, Farmers Home Administration Officer, Topeka, Kansas, by Mr. Thomas Kershaw, counsel for plaintiffs)

Q. To begin with, are you familiar with the provisions of 7 U.S.C. § 1981a?
A. Yes.
Q. Has it been called to your attention and have you examined it previously, I mean this particular statute?
A. I'm familiar with the—in part, yes sir.
Q. All right, you—you testified concerning the delinquency rate of loans in Kansas, which you said was better than the national average, but it still amounted to approximately 1,120 Farmers Home loans in Kansas that are delinquent?
A. That's correct.
Q. What's going to happen to all of these people if these loans are delinquent? What will happen now?
A. Well, if—as set forth in my earlier statement, 95 acceleration letters were sent during the fiscal year 1982. That represents a little less than 9 percent of the total borrowers that are delinquent.
Q. So you're trying to tell me that many or most of these people who are delinquent will not receive acceleration notices?
A. Only 9 percent of those that were delinquent the last fiscal year have been accelerated.
Q. What about—what's gonna be the policy? Are you going to accelerate more this year or—I'm just curious what happens to all these other people who are not accelerated?
A. It's impossible for me to forecast how many may be accelerated in a fiscal year, sir.
Q. If an individual is in default and the government determines for whatever reason not to accelerate him what will the government do, nothing—or, what might happen?
A. Well, there's a number of reasons as to why an account is accelerated as we've pointed out earlier, if there's any way that we can continue to work through the use of deferral, reamortization, rescheduling; those were the efforts and the direction that we go. But many

suggestion in the testimony of Mr. Francis Habiger, District Director, FmHA, and in a memorandum brief submitted by the government, see Defendant's Brief in Support of Motion for Summary Judgment, Dk. # 52, filed February 15, 1983, at p. 12, that regulations duly promulgated by the Department of Agriculture after the enactment of section 1981a constitute a de facto implementation of the statute.[2] Based upon the record before the court, the current FmHA practices pertaining to loan servicing do not reflect the standards imposed by the statute. The court finds that the Secretary of Agriculture has not implemented section 1981a in any meaningful manner, and further finds that the decision is a final agency action. The informal decision of the Secretary involves the purely legal question of the validity of an administrative interpretation of a statute and is therefore ripe for judicial consideration. *National Automatic Laundry and Cleaning Council v. Schultz,* 443 F.2d 689, 701 (D.C. Cir.1971).

■ The court is cognizant of its duty to determine whether litigants before it have satisfied the standing requirement imposed by Article III of the United States Constitution. *E.g., Citizens Concerned for Separation of Church and States v. City and County of Denver,* 628 F.2d 1289, 1295 (10th Cir.1980). Plaintiffs must demonstrate that they are arguably within the zone of interests to be protected by section 1981a. The government previously raised a standing concern in its Memorandum Brief in Opposition to Class Certification Dk. # 30, filed July 30, 1982, at p. 7.

> Some named plaintiffs are now in foreclosure actions filed by lienholders other than FmHA. One named plaintiff has obtained the discharge of his FmHA debts in bankruptcy. Some named plaintiffs have FmHA loans under programs other than the Consolidated Farm and Rural Development Act, Pub.L. No. 81–128 [sic] (7 U.S.C. § 1921, et seq.).

Standing to sue is a preliminary matter which focuses on the plaintiffs' right to bring suit and not on the merits of plaintiffs' claims. *Warth v. Seldin,* 422 U.S. 490, 500, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343, 355 (1975). The judicial power of federal courts is limited by the constitution to cases and

---

times an account has to be accelerated because the family has taken bankruptcy, converted security—there's a number of reasons other than default that an account is accelerated.

Q. I see, so some of those 9 percent might be people who are not in default at all.

A. That's correct. They may have converted security. They may have taken bankruptcy and been current with it.

Q. All right, you've stated earlier that you were familiar with section 1981. What if anything has the Department of Agriculture done with regard to this statute?

A. The Secretary has not implemented the statute.

Q. So you can tell us that there is no relief of any kind to anybody under this statute at the present time?

A. There's relief in accordance with our regulations that provides for reamortization, rescheduling and deferral.

Q. But if the Secretary hasn't implemented 1981 it's obvious that relief is not under this statute, is that true? It's under some other statute or regulation unrelated to this statute?

A. It would be a separate set of instructions.

2. The government contends "the Secretary ... has issued regulations pertaining to deferrals and routinely allows continuances of loans in default." Defendant's Brief in Support of Motion for Summary Judgment, Dk. # 52, filed February 15, 1983, at p. 11. The evidence that the government presented in support of its position that section 1981a is being enforced consisted of agency regulations, see 7 C.F.R. §§ 1951.33(e) and 1951.40(2), and testimony of Mr. Francis Habiger, District Director of FmHA, that he thought about the statutory factors in the case of Janice Stoss.

(Cross-examination of Francis Habiger by Thomas Kershaw, counsel for plaintiffs)

Q. All right, you refer to having a consideration of other factors, for example—circumstances beyond [her] control and the effect it might have on her [Janice Stoss] standard of living—and I believe you said on one occasion such considerations were engaged in while you were driving along in your car? Was that a usual way that you thought about these things or was there some formal consideration?

A. There was no formal consideration but as you know you ride along—you do muse about things that you've done.

In the court's opinion, the consideration given falls short of the duty imposed by section 1981a.

controversies. As Justice Powell stated for the majority in *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 37–38, 96 S.Ct. 1917, 1923, 48 L.Ed.2d 450, 460 (1976),

> [T]he relevant inquiry is whether, assuming justiciability of the claim, the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision. Absent such a showing, exercise of its power by a federal court would be gratuitous and thus inconsistent with the Article III limitation. (citations and footnotes omitted)

The first inquiry is whether the named plaintiffs have suffered an actual or threatened injury as a result of putatively illegal conduct of the defendant. *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66, 76 (1979). Testimony has been introduced to establish that receipt of a notice of acceleration from FmHA results in an inability to obtain short-term farm credit from local establishments. *Matzke I,* 542 F.Supp. at 1110 (Testimony of Janice Stoss). In addition, foreclosure of a United States lien in real property or chattels is a government action which affects a debtor's property interest and, therefore, must be accomplished in accordance with due process under the Fifth Amendment. *Rau v. Cavenaugh,* 500 F.Supp. 204, 206 (D.S.D.1980); *Ricker v. United States,* 417 F.Supp. 133, 138–39 (D.Me.1976). *See Fuentes v. Shevin,* 407 U.S. 67, 84, 92 S.Ct. 1983, 1996, 32 L.Ed.2d 556, 572 (1972). The court is satisfied that plaintiffs have suffered injuries to business interests which are sufficiently concrete to confer standing. *See Mountain States Legal Foundation v. Costle,* 630 F.2d 754, 764–65 (10th Cir.1980) (economic injury to a business resulting from a government rule is sufficient to establish standing to challenge the rule).

■ Plaintiffs must also demonstrate that the injury is traceable to agency action and that the injury is capable of being redressed by a favorable decision of the court. *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 38, 45–46, 96 S.Ct. 1917, 1924, 1927, 48 L.Ed.2d 450, 462, 464–65 (1976). FmHA is a lender of last resort for high-risk farm borrowers who are unable to obtain credit from commercial sources. An estimated 90 percent of FmHA mortgages on real estate are subordinate to mortgages of other lenders. (Testimony of Richard B. Wolters, FmHA County Supervisor). When a non-FmHA lender accelerates and forecloses on an FmHA borrower, the economic injury suffered by the farmer cannot fairly be attributed to FmHA. If the injury cannot be attributed to FmHA, it follows that the plaintiff does not have a claim against FmHA sufficiently adverse to confer standing. In a similar vein, if a FmHA borrower in monetary default of his loan obligation voluntarily liquidates property to satisfy obligations, or seeks the protection of the bankruptcy court, he or she lacks standing to sue FmHA for alleged denial of due process because the injury cannot be traced to the agency and cannot be redressed without adversely affecting the vested property rights of third parties. Based upon standing analysis, it is apparent to the court that not all of the named plaintiffs have the requisite standing to sue and may not seek relief individually or as representatives of the class. *Warth v. Seldin, supra,* 422 U.S. at 502, 95 S.Ct. at 2206, 45 L.Ed.2d at 357; *Weiner v. Bank of King of Prussia,* 358 F.Supp. 684, 694–95 (E.D.Pa.1973).

Alvin Matzke, Delmar Turley and Cheryl Turley are named as defendants in lawsuits by the Federal Land Bank of Wichita seeking to foreclose upon secured property. FmHA is joined in these suits as a junior lienholder with an interest in the subject of the foreclosure. Government exhibits # 24 and # 69. These plaintiffs have not clearly met their burden of showing a distinct injury as a result of FmHA action and therefore they lack standing to sue. Donald D. Lorlovick has received a discharge of his debts from the United States Bankruptcy Court for the District of Kansas. Government exhibit # 46. Mr. Lorlovick elected a remedy and there is nothing further the court can offer to redress an alleged denial

of procedural due process. Accordingly, the claims of Alvin Matzke, Delmar Turley, Cheryl Turley and Donald Lorlovick must be dismissed for lack of standing to sue.

■ Janice Stoss and William Leonard remain as named class representatives in this action. As the court previously found Janice Stoss has exhausted her administrative remedies. *Matzke I,* 542 F.Supp. at 1112 ¶ 5. Since the class is represented by a named plaintiff who has exhausted all remedies, it will not be necessary to impose an exhaustion requirement upon all of the unnamed class members. *Newsom v. Vanderbilt University,* 653 F.2d 1100, 1106 (6th Cir.1981). Since plaintiffs have demonstrated a justiciable controversy within the court's jurisdiction, we may turn to a consideration of the merits of the complaint.

■ The interpretation of section 1981a by the Secretary in connection with a program which he is charged to administer is entitled to deference from the court. *See Udall v. Tallman,* 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). While the court may not substitute its judgment for that of the agency, *Sabin v. Butz,* 515 F.2d 1061, 1067 (10th Cir.1975), the court may review the agency action to determine whether it is consistent with the intent of Congress as expressed in the controlling statute. *City and County of Denver v. Bergland,* 695 F.2d 465, 477 (10th Cir.1982). *See Morton v. Ruiz,* 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974).

■ After careful consideration of all the facts and circumstances of this case, the court finds that although the Secretary's interpretation of section 1981a is entitled to

deference, it should not be accorded controlling weight. As the court previously found, the Secretary has taken the position in this litigation that no FmHA-borrowers are eligible for loan deferral under the terms of section 1981a. So far as the court is aware, there is no rulemaking record to indicate whether the agency applied any expertise in reaching that decision, nor does it appear the agency interpretation of section 1981a reflects consideration of the competing public policies which motivated Congress to enact this amendment. The role of the agency is to extend credit to farmers who could not otherwise borrow necessary funds to continue farming, consistent with the continuing duty to protect the government's security interest in collateral. (Testimony of Charles W. Ladner, Farmers Home Administration Officer, Topeka, Kansas). The program under scrutiny is not a pure grant of assistance, nor is it a for-profit enterprise; rather, it is a mixture of the two which requires a balancing of factors. The determination of eligibility for loan deferrals is uniquely within the expertise of the agency and the only function of the court is to assure a rational decision based on consideration of relevant factors. There has been no showing that general notice publication and receipt of public comments was undertaken by the agency concerning its interpretation of section 1981a.[3] There has been no showing that the agency thoroughly considered the effects and gravity of consequences of its interpretation. *Frank Diehl Farms v. Secretary of Labor,* 696 F.2d 1325, 1330 (11th Cir.1983); *Western Coal Traffic League v. United States,* 694 F.2d 378, 383–84 (5th Cir.1982). Since courts are routinely called upon to construe statutes,

**3.** A rule is an agency statement of general applicability and future effect designed to implement, interpret or proscribe law or policy. 5 U.S.C. § 551(13). An agency's interpretation of an enabling statute which results in a substantive rule of general applicability is a rulemaking under the APA. *Rocky Mtn. Oil & Gas Assn. v. Watt,* 696 F.2d 734, 741 n. 8 (10th Cir.1982). It follows that a substantive interpretation of a statute is subject to general notice publication in the federal register and an opportunity for public comment pursuant to 5 U.S.C. § 553(b) and (c) of the APA.

The Department of Agriculture has voluntarily agreed that all rules promulgated after July 24, 1971 would have to meet the APA standards. *See Rodway v. United States Department of Agriculture,* 514 F.2d 809, 815 n. 9 (D.C.Cir. 1975) (citing 36 Fed.Reg. 13804). While not every statutory interpretation need be the subject of notice and comment, an interpretation which significantly affects the regulated industry, in this case agriculture, should be treated as a rulemaking by the agency in order to allow participation and avoid litigation.

we are in a position of competence equal to that of the agency to interpret section 1981a. Accordingly, the court will apply the rules of statutory construction and examine the legislative history to determine whether there is any reasonable basis for the Secretary's interpretation. *Rocky Mountain Oil and Gas Association v. Watt,* 696 F.2d 734, 745 (10th Cir.1982).

The authority of the Secretary in connection with the Consolidated Farm and Rural Development Act is governed by 7 U.S.C. §§ 1981 and 1989. The Secretary is authorized to "compromise, adjust, or reduce claims, and adjust and modify the terms of mortgages, leases, contracts, and agreements entered into or administered by the Farmers Home Administration under any of its programs, as circumstances may require." 7 U.S.C. § 1981(d). The secretary is further authorized to "collect all claims and obligations arising or administered under this chapter, or under any mortgage, lease, contract, or agreement entered into or administered pursuant to this chapter and, if in his judgment necessary and advisable, pursue the same to final conclusion in any court having jurisdiction." 7 U.S.C. § 1981(e). In order to carry out his delegated responsibilities, the Secretary has authority "to make such rules and regulations, prescribe the terms and conditions for making or insuring loans, security instruments and agreements, except as otherwise specified herein, and make such delegations of authority as he deems necessary to carry out this chapter." 7 U.S.C. § 1989. The administration of a farm loan program necessarily entails broad discretion in the application of objective and subjective factors to individual circumstances. The court finds that the range of choices provided in the statutory scheme is broad enough to permit the Secretary to determine eligibility for loan servicing options including denial of moratorium relief based upon consideration of the relevant factors.

The language of a statute is controlling if it is sufficiently clear in context. *Rocky Mountain Oil and Gas Association, supra; Blue Cross Association v. Harris,* 664 F.2d 806, 809 (10th Cir.1981). It is clear that the discretion of the Secretary to grant or withhold moratorium relief is to be exercised "at the request of the borrower" and "upon a showing by the borrower that due to circumstances beyond the borrower's control, the borrower is temporarily unable to continue making payments of such principal and interest when due without duly impairing the standard of living of the borrower." 7 U.S.C. § 1981a. The court recognizes that discretion is involved in the decision whether to grant a loan deferral as is evidenced by the language of section 1981a which provides that the Secretary "may permit" deferral and "may forego foreclosure." *Matzke I,* 542 F.Supp. at 1114. However, it is evident from the language of the statute that Congress intended to structure the exercise of discretion to allow deferral of loans to borrowers within the zone of interests to be protected under the statute.

As the court stated in *Matzke I,* 542 F.Supp. at 1115, the Secretary is free to consider any relevant factors which bear a rational relationship to the statutory factors. Congress left to the Secretary the task of determining eligibility for deferral under section 1981a. The method of exercising the delegated authority, whether by rulemaking or adjudication, is up to the Secretary to determine. *Vermont Yankee Nuclear Power Corp. v. National Resources Defense Council,* 435 U.S. 519, 543–44, 98 S.Ct. 1197, 1211, 55 L.Ed.2d 460, 479 (1978). The existing administrative hearing procedures for agency decision and for review of agency decisions appear to be well suited to the type of hearing contemplated in the statute. The language of the statute does not provide for notice or for a hearing on the record, therefore, the court concludes that constructive notice and an informal hearing would suffice.

The Secretary interprets section 1981a as a clarification of pre-existing authority, presumably embodied in 7 U.S.C. § 1981, *supra.* The court cannot accept, as the Secretary suggests, that the amendment requires no agency action because im-

plicit in this argument is the proposition that Congress enacted a superfluous amendment. A statute must be interpreted in light of an assumed purpose. *Rank v. Nimmo,* 677 F.2d 692, 703 (9th Cir.1982) (Reinhardt, J. dissenting). Even a clarification of existing law requires some change of position by an agency, otherwise the court must attribute to Congress a gratuitous exercise of legislative power.

The court is in substantial agreement with the analysis of the legislative history of this amendment by the Honorable Anthony A. Alaimo, *Curry v. Block,* 541 F.Supp. at 516-21. The court notes that the language "in addition to any other authority the Secretary may have" was included "so that the Secretary's authority under current [pre-1978 amendment] law would not be reduced or impaired by the proposed amendment." 3–1978 U.S.Code Cong. & Ad.News 1106, 1132. This specific reference contemplates a separate program of deferral under section 1981a and is inconsistent with the Secretary's position that the amendment was offered only to "clarify" existing authority. The court acknowledges that there are specific references that the amendment was offered to "clarify" the Secretary's authority, 3–1978 U.S.Code Cong. & Ad.News 1106, 1109 & 1132. The history reveals though that the subcommittee specifically voted to add the language "in addition to any other authority the Secretary may have" so as not to reduce or impair existing authority and there is no affirmative endorsement of the word "clarify" anywhere in the history of the amendment. *Id.* at 1132. The standards identified in the statute were derived from the Housing Act moratorium provision, 42 U.S.C. § 1475, administered by the FmHA. While similarity of language is noted, the court is not persuaded that the statutes should be construed together because of the dissimilarity in program goals and adminis-

tration. Nonetheless, inclusion of the standards is a strong indication that Congress intended to limit the Secretary's discretion under section 1981a within the statutory standards. K. Davis, Administrative Law § 8:4 (1979). The court is not persuaded by plaintiffs' contention that the Secretary's discretion pursuant to section 1981a does not become operative unless the borrower requests deferral. Section 1981a must be read as amendatory of the grant of authority contained in 7 U.S.C. § 1981. When read in this light, it is apparent that Congress intended to provide an additional loan servicing tool to be used if the stated conditions could be met by the borrower. There is no suggestion in the statute that Congress intended to issue a "blanket moratorium." We do not find either in the statute or its legislative history a requirement for formal notice or a hearing on the record. In summary, the court interprets the statute, in light of its legislative history, to require the Secretary, or his delegate, to accept requests for deferral under section 1981a, and to determine eligibility based on relevant statutory factors. Since some degree of judicial review may be requested by applicants, the court strongly recommends that written findings be made in connection with the decision.

Among other authorities which the government cites in support of its position is the decision of the court in *Rank v. Nimmo,* 677 F.2d 692 (9th Cir.1982). Plaintiffs alleged the Veteran's Administration failed to exercise its discretion by refusing to implement a loan assignment program pursuant to 28 U.S.C. § 1981(a).[4] The statute permitted the agency to pay the balance of a VA guaranteed home loan and to receive an assignment of the loan and security. The district court specifically found that the VA's failure to implement the statutory program contemplated in the statute

---

4. The assignment-refunding section of the VA Act, 38 U.S.C. § 1816(a) provides in pertinent part:

   Before suit or foreclosure the holder of the obligation shall notify the Administrator of the default, and within thirty days thereafter the Administrator may, at the Administrator's option, pay the holder of the obligation the unpaid balance of the obligation plus accrued interest and receive an assignment of the loan and security.

constituted illegal failure to exercise discretion. 677 F.2d at 696.

The court of appeals reversed holding that the use of the word "may" in the statute *coupled with the absence of any standards* indicated that Congress intended to leave the decision when, if ever, to apply the assignment-refunding remedy within the discretion of the agency. 677 F.2d at 696. The significant fact which distinguishes the instant case is that section 1981a provides meaningful standards to limit the exercise of discretion. If the rule of law stated in *Rank v. Nimmo* is correct, then the court *should* require an agency to implement a statutory program when Congress has specified the boundaries of delegated law-making authority. To hold otherwise would insulate agency inaction from judicial review.

The court finds that section 1981a provides for the exercise of agency discretion limited by meaningful standards. Accordingly, the standards must be implemented by the agency. Refusal to implement the standards is unreasonable and not within the Secretary's authority. The court does not hold that the Secretary could not determine through proper rulemaking, after consideration of the relevant factors, that no FmHA-borrowers are currently eligible for relief under section 1981a. In the court's opinion that would be a proper exercise of delegated rulemaking authority. Neither does the court today hold that Congress could not, if it so intended, enact a statute leaving the decision whether to grant loan moratorium relief in the unfettered discretion of the Secretary. The Secretary of Agriculture, or his delegate, must accept applications for deferral under section 1981a and consider the relevant statutory factors: (1) whether the borrower is temporarily unable to continue making payments due to circumstances beyond the borrower's control, and (2) whether the borrower's standard of living will be unduly impaired by having to make such payments when due. The agency cannot ignore a statutory duty.

Where an agency completely ignores the purpose of the controlling statute, as the defendants did in this case, there cannot be any rational basis in law to support its decision. A reviewing court would be doing less than its duty if it failed to set aside the agency action. By holding an agency accountable to its lawful duties, the administrative process will be vindicated.

*Operating Engineers Local 627 v. Arthurs,* 355 F.Supp. 7, 9 (W.D.Okla.), *aff'd,* 480 F.2d 603 (10th Cir.1973).

The court has been provided with copies of opinions from coordinate courts. The decision of the court is supported in its finding that the Secretary of Agriculture is under a mandatory duty to implement section 1981a by the courts in *Curry v. Block,* 541 F.Supp. 506, 522 (S.D.Ga.1982); *Allison v. Block,* No. 82–4300–CV–5, unpublished order (W.D.Mo. Dec. 8, 1982); and *Allison v. Cavanaugh,* No. 80–4226–CV–C–H, unpublished memorandum opinion (W.D.Mo. Jan. 14, 1983). The court respectfully disagrees with, and finds unpersuasive, unpublished decisions holding to the contrary.

Plaintiffs allege that the conduct involved in this case is violative of the Fifth Amendment in that plaintiffs have been denied notice and an opportunity to be heard pursuant to section 1981a. The court will not pass upon a constitutional question, although properly presented, if there is an alternative ground upon which the case may be decided. *E.g., Ashwander v. T.V.A.,* 297 U.S. 288, 347 ¶4, 56 S.Ct. 466, 483, 80 L.Ed. 688, 711 ¶4 (1935). Since the court has construed section 1981a and determined that the agency interpretation is inconsistent with a statutory mandate, it is not necessary to pass upon the constitutional questions involved. The issue of attorney's fees is not decided, however the court will consider an appropriate motion pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412. All other claims for relief by plaintiffs are denied.

IT IS THEREFORE ORDERED that the claims of Alvin Matzke, Delmar Turley,

Cheryl Turley and Donald Lorlovick be, and hereby are dismissed.

IT IS FURTHER ORDERED that *United States v. Franz,* Civil No. 82–1331, which was consolidated with *Matzke v. Block,* Civil No. 82–1075 for a pretrial determination of issues be, and hereby is, severed and will proceed separately since the court's determination is not conclusive of all the issues remaining in that case.

IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment is sustained and defendant's motion for summary judgment is overruled. IT IS FURTHER ORDERED that John Block, Secretary of Agriculture, his officers, agents and employees, and those in active concert with him who receive actual notice of this order by service or otherwise, are hereby enjoined to take the following actions:

(1) At the request of a plaintiff borrower under the Consolidated Farm and Rural Development Act, Pub.L. No. 87–128, 75 Stat. 307 (1961) who is within the zone of interests to be protected under section 1981a, accept applications for deferral of principal and interest pursuant to section 1981a, and

(2) grant or deny moratorium relief pursuant to section 1981a based on consideration of all relevant statutory factors, or factors rationally related thereto, all in accordance with law.