Albert GAMRADT, Pearl Gamradt, Leslie Fetters, Robert Hansen, Carol Hansen, Dale Fitzner, Elizabeth Seely, Gayle Rasmussen, Earle Nihart, Robert Smith, Jr., Elizabeth Smith, James Ratka, Doris Ratka, on behalf of themselves and others similarly situated, Plaintiffs,

v.

John R. BLOCK, Secretary of United States Department of Agriculture; Charles W. Shuman, Administrator of the Farmers Home Administration; Russ Bjorhus, Minnesota State Director of Farmers Home Administration; Niles Westby, Minnesota Chief of Farmer Home Administration; Bob McDowell and Gary Pender, District Directors of the Farmers Home Administration in Minnesota; Chris Barnier, Merle Plante, Michael Smith and Charles Offerdahl, County Supervisors of the Farmers Home Administration in Minnesota, Defendants.

No. 5–83 Civ. 158.

United States District Court,
D. Minnesota.

Oct. 20, 1983.

Mid-Minnesota Legal Assistance, Inc. by James T. Massey, and Lynn Hayes, Minneapolis, Minn., for plaintiffs.

Kurt M. Anderson, Willmar, Minn., for plaintiffs Robert Smith, Jr. and Elizabeth Smith.

Hubert H. Humphrey, III, Asst. Atty. Gen. by Catherine F. Haukedahl, Asst. Atty. Gen., St. Paul, Minn., amicus for plaintiffs.

James M. Rosenbaum, U.S. Atty. by Mary L. Egan, Asst. U.S. Atty., Minneapolis, Minn., for defendants.

## MEMORANDUM ORDER

ALSOP, District Judge.

This matter comes before the court upon plaintiffs' motion for a preliminary injunc-

tion. The named and class plaintiffs first ask this court for an order restraining defendants from taking or threatening to take the following actions: accelerating indebtedness, foreclosing on real property or chattels, repossessing, liquidating or in any other way proceeding against or depriving plaintiffs of property in which defendants have a security interest until defendants promulgate regulations that implement 7 U.S.C. § 1981a (1982) and that satisfy due process and until plaintiffs, following adequate notice, hearing and appeals procedures, have had time to exhaust their efforts to obtain deferral and moratorium relief.

Second, named and class plaintiffs ask for an order restraining defendants from taking or enforcing any loan servicing action that deprives plaintiffs of property needed to operate their farms and provide necessary living expenses until defendants promulgate regulations requiring that, before such action is taken, the borrower be provided notice, be advised of facts that form the basis for the action, be afforded an opportunity to present additional facts or comments and be allowed to request a hearing before an impartial hearing examiner.

Third, plaintiffs request an order restraining defendants from depriving them of income from their production sufficient to pay family living and farm operating expenses. Plaintiffs also move for summary judgment on their first and third claims. Defendants oppose the motion.

I. Standard for Preliminary Injunction

The standard for determining whether a preliminary injunction should issue involves consideration of: one, the threat of irreparable harm to the movant; two, the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; three, the probability that the movant will succeed on the merits; and four, the public interest. *Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 113 (8th Cir.1981).

Plaintiffs allege they will suffer irreparable harm unless an injunction is granted because they will continue to: lose their equipment, livestock, crops, and real property and be forced to cease farming; be unable to meet family subsistence needs; be deprived of constitutional and statutory rights; be forced to liquidate without knowing about deferral relief; and be unable to obtain adequate relief at law. Defendants contend that mere financial difficulty does not constitute irreparable harm. FmHA has not accelerated the indebtedness of plaintiffs Gamradt and Hansen and has no present intention of doing so. Plaintiff Fetters has already voluntarily liquidated most of his livestock and chattels. Furthermore, deferrals and rescheduling are taking place in Minnesota, liquidations are few and foreclosures are used only as a last resort. Only if the court agrees that plaintiffs have a substantial likelihood of demonstrating a violation of statutory or constitutional rights can plaintiffs be said to have shown the threat of irreparable harm, defendants argue.

The court finds that plaintiffs have demonstrated a threat of irreparable harm. While plaintiffs have not been accelerated or foreclosed, it is enough that plaintiffs face the threat of impending injury. *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 143, 95 S.Ct. 335, 358, 42 L.Ed.2d 320 (1974). Plaintiffs are not required to suffer irreparable injury before seeking redress. Furthermore, since the court in part II finds that plaintiffs have demonstrated a likelihood of success on their claim that failure to implement a deferral program violates their statutory rights, even under defendants' view, plaintiffs have shown a threat of irreparable harm.

The balance of harms favors issuance of the injunction. While defendants will suffer some administrative inconvenience and expense with a deferral hearing, may lose some interest income and may have to postpone taking action to protect their position, perhaps losing some of the value of the security due to delay, those harms are outweighed by the injury plaintiffs will suffer if an injunction is not granted.

Plaintiffs have demonstrated a probability of success on the merits of their § 1981a claim and their challenge to part of the liquidation process. *See* part II, *infra.* Finally, issuance of a preliminary injunction is in the public interest. Although the public has an interest in permitting FmHA to administer its program without unwarranted judicial interference, there is no public interest in allowing an abuse of discretion to continue. The public interest is to help citizens feel they have been dealt with fairly and to avoid erroneous deprivation of essential benefits. *Coleman v. Block,* 562 F.Supp. 1353 (D.N.D.1983).

## II. Section 1981a

### A. The Statute

The Agricultural Credit Act of 1978, Pub.L. No. 95–334, § 122, 92 Stat. 427 (codified at 7 U.S.C. § 1981a) (1982) (hereinafter § 1981a) provides:

In addition to any other authority that the Secretary may have to defer principal and interest and forego foreclosure, the Secretary may permit, at the request of the borrower, the deferral of principal and interest on any outstanding loan made, insured, or held by the Secretary under this title, or under the provisions of any other law administered by the Farmers Home Administration, and may forego foreclosure of any such loan, for such period as the Secretary deems necessary upon a showing by the borrower that due to circumstances beyond the borrower's control, the borrower is temporarily unable to continue making payments of such principal and interest when due without unduly impairing the standard of living of the borrower. The Secretary may permit interest that accrues during the deferral period on any loan deferred under this section to bear no interest during or after such period: *Provided,* That if the security instrument securing such loan is foreclosed such interest as is included in the purchase price at such foreclosure shall become part of the principal and draw interest from the date of foreclosure at the rate prescribed by law.

Plaintiffs contend that the Secretary of Agriculture's failure to implement § 1981a contravenes congressional intent, denies them due process and violates the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.* (1982).

Plaintiffs urge the court to interpret § 1981a as vesting discretion in the Secretary to grant relief in a particular case, but as requiring the Secretary to exercise the authority granted by § 1981a. Plaintiffs claim that FmHA is a social welfare agency; that the plain language of the Act, by saying "at the request of the borrower" and "upon a showing by the borrower," shows that the section is mandatory; that the use of the word "may" instead of the word "shall" is not dispositive; that Congress intends that its enactments be given effect; that the serious economic crisis confronting American agriculture in 1978 provides the historical context within which congressional intent must be divined; and that a reference in a House Report to comparable language in the Rural Housing Act, 42 U.S.C. § 1475 (1976), shows that Congress intended the Secretary to implement a similar program under § 1981a. Plaintiffs rely on *United States v. Hamrick,* 713 F.2d 69 (4th Cir.1983); *Chandler v. Block,* No. 83–4025–CV–C–5 (W.D.Mo. July 16, 1983); *Lehnert v. Block,* No. 83–2328–M (W.D.Tenn. June 27, 1983); *Jacoby v. Schuman,* 568 F.Supp. 843 (E.D.Mo. 1983); *Coleman v. Block,* 562 F.Supp. 1353 (D.N.D.1983); *Gates v. Block,* No. 83–6025–CV–SJ (W.D.Mo. May 5, 1983); *Matzke v. Block,* 564 F.Supp. 1157 (D.Kan. 1983); *Allison v. Block,* 556 F.Supp. 400 (W.D.Mo.1982); and *Curry v. Block,* 541 F.Supp. 506 (S.D.Ga.1982).

Defendants argue, first, that § 1981a is discretionary rather than mandatory and, second, that even if § 1981a is mandatory, existing deferral regulations adequately implement that section. Defendants contend FmHA is more like a private financial lender than a social welfare agency; that the statute clearly says "may" and must be permissive; that the legislative history shows Congress intended the statute to be

discretionary and recent legislative developments confirm that interpretation; that the agency's construction of the statute is controlling; and that existing deferral regulations at 7 C.F.R. §§ 1951.33 and 1951.40 adequately implement the statute. Defendants rely on, among others, *Ramey v. Block*, No. 3–82–557 (E.D.Tenn. Jan. 20, 1983); *Neighbors v. Block*, No. LR–C–82–765 (E.D.Ark. Dec. 15, 1982); *Rowell v. Secretary of Agriculture*, No. 82–181–S (M.D.Ala. Dec. 6, 1982); *United States v. Hamrick*, No. 82–608–3 (D.S.C. Nov. 15, 1982); *Moskiewicez v. Block*, No. 82–C–231 (W.D.Wis. Sept. 10, 1982).

The court observes as a preliminary matter that the issues raised by this case are being raised in numerous district and circuit courts around the country, including the Eighth Circuit. Specifically, *Allison v. Block*, 556 F.Supp. 400 (W.D.Mo.1982) is on appeal to the Eighth Circuit and oral argument has been heard. It seems unfortunate to this court that substantial amounts of time and taxpayer dollars are being expended to litigate and decide essentially duplicative lawsuits.

### B. The Standard of Review

Before determining whether § 1981a requires or merely permits the Secretary to establish a deferral program, the court must decide whether the Secretary's decision not to implement that section is subject to judicial review and, if so, what constitutes the proper standard of review. Although neither party has addressed these issues, it is the court's responsibility nonetheless to maintain the proper balance between the judicial and executive branches. Ascertaining the proper scope of judicial review of administrative decisions is one means of preserving that balance.

▋ Section 701 of the Administrative Procedure Act, 5 U.S.C. § 701 (1982) (here-

inafter APA) provides that the action of each agency of the United States is subject to judicial review unless statutes preclude review or agency action is committed to agency discretion by law. No statute appears to preclude review nor is this a situation where the statute in question is so broadly drawn that there is no law to apply.[1] The exemption for action committed to agency discretion is thus inapplicable, *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410–413, 91 S.Ct. 814, 820–822, 28 L.Ed.2d 136 (1971) and the decision of the Secretary not to establish a deferral program is subject to judicial review.

The standard of judicial review is found in § 706 of the APA. That section provides that:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
>
> > (1) compel agency action unlawfully withheld or unreasonably delayed; and
> >
> > (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
> >
> > > (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

Courts have differed on the proper subsection of § 706 that governs challenges to the Secretary's failure to implement § 1981a. The court in *Matzke v. Block*, 564 F.Supp. 1157 (D.Kan.1983), applied § 706(1) and concluded that the agency violated its statutory mandate by its failure to act. The court determined that it could review the agency's failure to act to determine whether it was consistent with the

---

**1.** "If the controversy merely 'involves' agency discretion, as opposed to being 'committed' to agency discretion, the matter is reviewable." *Santor v. Morton*, 383 F.Supp. 1265, 1266 (D.Wyo.1974) (citing *Ferry v. Udall*, 336 F.2d 706 (9th Cir.1964), *cert. denied*, 381 U.S. 904, 85 S.Ct. 1449, 14 L.Ed.2d 286 (1965). Even where Con-

gress has directed the agency to exercise its discretion, the agency action is subject to judicial review to determine if the agency has exceeded its statutory authority or acted arbitrarily or capriciously. *Fidelity Federal Savings & Loan Assoc. v. De La Cuesta*, 458 U.S. 141, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982).

intent of Congress as expressed in the controlling statute. *Id.* at 1165. The court found itself in a position of equal competence with the agency to interpret § 1981a and determine whether there was any reasonable basis for the Secretary's interpretation. *Id.* at 1165–1166. After examining the language of § 1981a and its legislative history, the court concluded, "it is apparent that Congress intended to provide an additional loan servicing tool [deferral] to be used if the stated conditions could be met by the borrower." *Id.* at 1167. The court held that the Secretary's refusal to implement standards under § 1981a was unreasonable and outside the Secretary's authority and required the Secretary to accept applications for deferral and to grant or deny relief based upon consideration of the relevant statutory factors. *Id.* at 1168–1169.

In contrast, the court in *Allison v. Block,* 556 F.Supp. 400 (W.D.Mo.1982), applied the standard set forth in § 706(2)(A). The court found that § 1981a gives the Secretary discretion to grant or deny a deferral, that the Secretary must exercise that discretion, and that refusal to exercise discretion was itself an abuse of discretion in violation of 5 U.S.C. § 706(2)(A). *Id.* at 404. The court required the agency to formulate standards for § 1981a deferral and to state findings and reasons showing a proper application of those standards. "The Secretary violates his duty to consider whether deferral should be granted if no procedures are instituted to provide the borrower with an opportunity to show that he is entitled to be considered for § 1981a deferral relief," the court said. *Id.* at 406.

These different approaches to the proper standard of review are not troublesome because the court concludes, for reasons to follow, that the Secretary's refusal to implement § 1981a violates both 5 U.S.C. § 706(1) and § 706(2)(A).

### C. Historical Role of FmHA

In the interest of brevity, the court will dispense with a description of the mission of the Department of Agriculture and the FmHA in the administration of farm credit programs. The court adopts the thorough analysis of *Curry v. Block,* 541 F.Supp. 506, 509–511 (S.D.Ga.1982). It is sufficient to note that, as recently as 1978 in H.R. Rep. No. 986, 95th Cong., 2d Sess. 1, 22, *reprinted in* 1978 U.S.Code Cong. & Ad. News 1106, 1127, Congress described the primary mission of FmHA as helping farmers with limited resources become successfully established in agriculture and assisting farmers, with loans, to remain in business. *Id.* at 1127. Congress observed that many of the benefits of FmHA loans are humanitarian and listed ten ways in which FmHA farm lending programs contribute to the development of rural America, among them: assisting qualified farm families, establishing a reservoir of young farmers, helping those in rural areas remain on the land, promoting a cohesive force that binds rural people together, giving people a chance, strengthening the local tax base, aiding small businesses to continue to be part of the community, furnishing leadership, and so on. *Id.*

While FmHA shares some common characteristics with private lenders, it is and always has been a lender of last resort for farmers unable to obtain adequate credit from conventional sources. *Id.* at 1126–27. The United States Supreme Court has recognized that FmHA lending programs are a form of social welfare legislation. *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 735, 99 S.Ct. 1448, 1462, 59 L.Ed.2d 711 (1979). Defendants correctly note that FmHA loans are not grants and are made or continued on the reasonable expectation of ultimate repayment. They distinguish FmHA farm loans from FmHA rural housing loans, observing that the former are larger, are made to experienced businesspersons and are directly tied to the income-producing potential of the borrower. Whether or not FmHA lending programs be labeled a form of social welfare, this court is persuaded that the FmHA farm loan programs are intended to implement broad goals of public policy; the agency may properly be expected to behave differ-

ently than a private lender not subject to those goals.

With that background in mind, the court turns to the statute in issue.

### D. Mandatory Nature of § 1981a

■ Both the language of the statute and its legislative history convince this court that § 1981a mandates implementation of a deferral program. Several courts have exhaustively addressed this precise issue and have reached the same conclusion. *See* cases cited at 125, *supra. But see* cases cited at 126, *supra.*

The court finds, first, that the language of § 1981a clearly contemplates implementation of a deferral program. The authority is "[i]n addition to any other authority that the Secretary may have ...." 7 U.S.C. § 1981a (1982). The statute provides that the Secretary may permit deferral "at the request of the borrower" and "upon a showing by the borrower." *Id.* Use of the word "may" rather than shall is not conclusive. Justice William H. Rehnquist as former Assistant Attorney General explained: "[O]n the question of trying to find a mandatory intent on the part of Congress, it is not a question of looking for the word 'shall' as opposed to 'may.'" "Memorandum Re Presidential Authority to Impound Funds Appropriated for Assistance to Federally Impacted Schools," *reprinted in Hearings on Executive Impoundment of Appropriated Funds Before the Subcomm. on Separation of Powers of the Senate Judiciary Comm.,* 92d. Cong., 1st Sess. at 234 (1971). The language of § 1981a expresses a clear intent that borrowers be allowed the opportunity to apply for a deferral.

The court finds, second, that the legislative history confirms that § 1981a was intended to be implemented. Congress held exhaustive hearings in 1978 on the serious economic crisis confronting American agriculture. That crisis gave birth to the American Agriculture Movement and protesting farmers, riding their tractors, descended upon Washington, D.C. Newspapers carried a plethora of stories about the plight of the American farmer. Congress observed in H.R.Rep. No. 986, 95th Cong., 2d. Sess. 1, 21 *reprinted in* U.S.Code Cong. & Ad.News 1106, 1126, that net farm income was at its lowest level since 1940 when adjusted for inflation, that farm debt had doubled since 1970, that the drought of 1977 was the most severe in decades and coupled with low commodity prices and high production costs, had put farmers in a financial bind. An increasing number of commercial financial institutions found themselves unable to extend additional credit to farmers. In this setting, Congress passed the Agricultural Credit Act of 1978 whose purpose was to "broaden FmHA authorities to cope with today's problems and be of greater service to farmers and the rural community." *Id.* at 22, 1127. Part of that act authorized the Secretary to permit loan deferrals.

The congressional debate over what became § 1981a is, in hindsight, not as clear as the court would hope. Defendants argue that since no statutory ambiguity exists, there is no need to consult the legislative history, but that if there is such a need, the history unquestionably shows that the statute is permissive. Defendants point to language in the House Report to the effect that the bill "clarifies" the Secretary's authority. *See* H.R.Rep. No. 986, 2d. Sess. 4, 27 *reprinted in* 1978 U.S.Code Cong. & Ad.News 1109, 1132. They also claim that remarks by Senator Eagleton, the sponsor of the bill in the Senate, show that a mandatory § 1981a was considered and rejected. *See* "Defendants' Memorandum in Opposition to Motion for Preliminary Injunction" at 18–21. House Report references to "comparable language" in the Rural Housing Act, 42 U.S.C. § 1475 (1976) regarding loan payment moratoria are undermined, defendants say, by the practical and theoretical differences between the farm loan and rural housing programs. *Id.* at 7. Finally, defendants urge that recent legislative attempts to pass a bill requiring the Secretary to grant deferrals show by implication that the current law is discretionary. *Id.* at 22–23.

In contrast, plaintiffs consider the clarification language proof that § 1981a was to provide the Secretary with new, additional authority. That language is not evidence that Congress intended § 1981a to be permissive; it certainly is not evidence that refutes their proof of § 1981a's mandatory nature, plaintiffs say. The remarks of Senator Eagleton when read in context, plaintiffs explain, do not support defendants' conclusions. In plaintiffs' view, the Senator's original proposal required the Secretary to grant blanket deferrals for three years to any farmer in a disaster area with no interest to be charged on the interest. The Secretary had no discretion to refuse deferrals or consider need. *See* "Plaintiffs' Reply to Defendants' Memorandum in Opposition to Motion for Preliminary Injunction" at 3. Senator Eagleton then retracted that rigid position for a more flexible proposal that ultimately became § 1981a. The reference in the House Report to comparable language, plaintiffs contend, shows that Congress was aware when it enacted § 1981a that the Secretary had issued regulations under the Housing Act's moratorium provision. *See* "Plaintiffs' Memorandum of Law in Support of their Motion for Preliminary Injunctive Relief and Partial Summary Judgment" at 14–16. Finally, the use of subsequent legislative history to determine what Congress meant when it passed § 1981a is improper, plaintiffs suggest, citing the Supreme Court as follows: "[S]tatutes are construed by the courts with reference to the circumstances existing at the time of the passage. The interpretation placed upon an existing statute by a subsequent group of [legislators] who are promoting legislation and who are unsuccessful has no persuasive significance here." *United States v. Wise,* 370 U.S. 405, 411, 82 S.Ct. 1354, 1358–1359, 8 L.Ed.2d 590 (1962).

The court is persuaded that plaintiffs' reading of the legislative history is the more accurate one. The court agrees with the analysis of the section's legislative history found in *Curry v. Black,* 541 F.Supp. at 516–21 and in *Matzke v. Black,* 564 F.Supp. at 1166–1167 (D.Kan.1983). Implicit in defendants' approach is the proposition that Congress enacted a superfluous amendment, one it did not intend to be implemented. The court does not accept that proposition. *Accord, Matzke v. Black,* 564 F.Supp. 1157 at 1166 (D.Kan.1983); *Allison v. Block,* 556 F.Supp. 400 (W.D.Mo. 1982) at 405; *Coleman v. Block,* 562 F.Supp. 1353 (D.N.D.1983). Judge Van Sickle aptly said, "This statute [§ 1981a] is not a shining example of legislative art.... But when the Congress assembled speaks with all the pomp and ceremony of a statutory enactment, I must presume its language mandates something." *Id.* at 1361 n. 4.

Given the historical role of FmHA as a lender of last resort and champion of rural America, given the severe economic crisis confronting American agriculture in 1978, and given the mounting pressure on Congress to do something to extricate farmers from their plight, it seems to this court more than likely that Congress did not consider the possibility that the moratorium and deferral authority so desperately sought would be allowed to languish unexercised. That the Secretary would have discretion to grant or deny individual deferrals is unquestioned; that the Secretary would be required to implement a program within which to exercise that discretion is less clear but is in this court's view the better interpretation.

The court finds, based on the language of the statute and its history, that Congress intended § 1981a be implemented. Accordingly, the agency's failure to act is unlawful in violation of 5 U.S.C. § 706(1) and arbitrary, capricious and an abuse of discretion in violation of 5 U.S.C. § 706(2)(A). Defendants' argument that existing regulations at 7 C.F.R. §§ 1951.33 and 1951.40 adequately implement § 1981a is unfounded. *See Lehnert v. Block,* No. 83–2328–M (W.D.Tenn. June 27, 1983) at 7–9 (explaining why 7 C.F.R. § 1951 is not a proper substitute for 7 U.S.C. § 1981a); "Plaintiffs' Memorandum in Support of Their Motion ..." at 22.

■ While the court has found that the Secretary must implement § 1981a, the court agrees with those cases that have determined that the method of exercising the delegated authority, whether by rule-making or adjudication, is for the Secretary to decide. *See Coleman,* 562 F.Supp. 1353 at 1362 (D.N.D., 1983); *Matzke v. Block,* 564 F.Supp. at 1166 (D.Kan.1983) (*citing Vermont Yankee Nuclear Power Corp. v. National Resources Defense Council, Inc.,* 435 U.S. 519, 543–44, 98 S.Ct. 1197, 1211–1212, 55 L.Ed.2d 460 (1978). The court does not hold that the agency must promulgate regulations. *Contra, Curry v. Block,* 541 F.Supp. 506, 516 (S.D.Ga.1982). Instead, the court holds that the agency must consider the relevant statutory factors in deciding whether to grant or deny deferrals. The relevant factors include: one, whether the borrower is temporarily unable to continue making payments due to circumstances beyond the borrower's control; and two, whether the borrower's standard of living would be unduly impaired if the borrower were required to make the payments.

Both the *Coleman* court and the *Allison v. Block* court required the Secretary to formulate standards for § 1981a deferral. As the *Coleman* court noted, the statute gives an applicant no idea of how living standards are determined, how severe an impairment is required, what constitutes a reason beyond the borrower's control, and how temporary is defined. *Coleman v. Block,* 562 F.Supp. 1353 at 1165 (D.N.D. 1983). Some further specification of the statutory standards, the court felt, was necessary to give the applicant notice of the factors he or she must show. *Id.* The court in *Allison v. Block,* 556 F.Supp. 400 (W.D.Mo.1982) required the agency to formulate standards and state findings and reasons showing a proper application of those standards. *Id.* at 405. *Coleman* similarly required written decisions and *Matzke* strongly recommended that written findings be made since judicial review of the agency's decision might be sought. *Matzke v. Block,* 564 F.Supp. 1157 at 1167 (D.Kan.1983). This court will follow the other decisions in this circuit that have required the agency to specify further standards and to make written findings on the deferral decision.

Finally, the court must consider whether notice of § 1981a to borrowers is necessary and, if so, what type of notice is sufficient and when it must be given. Plaintiffs request that the borrower be provided with adequate notice of the opportunity to apply for deferral before any action such as acceleration, liquidation or any proceeding against the property is taken, but fail to specify what constitutes adequate notice. Defendants contend that notice is not necessary, that if it is, such notice arises through the normal give and take between the borrower and FmHA officials and through the declaration of FmHA's servicing powers, and that even if specific notice is required, it is already provided by new notices supplied both when a loan is closed and when a new production season begins.

■ The court finds that § 1981a requires notice to the borrower. The *Allison* court noted that, "It is futile to enact a statute which requires the borrower to request relief without intending also that the borrower be informed of that requirement." *Allison,* 556 F.Supp. at 405. The court there found that the purpose of the statute could not be achieved unless borrowers were informed of its provisions. *Id.* The *Coleman* court also concluded that the language clearly contemplated that the borrower know about the possibility of obtaining a loan deferral. *Coleman v. Block,* 562 F.Supp. 1353 at 1361 (D.N.D., 1983). This court agrees that some type of notice is required.

While some courts have found that constructive notice is sufficient (*see Matzke v. Block,* 564 F.Supp. 1157 at 1166 (D.Kan. 1983), others have required personal notice. *See, e.g., Curry v. Block,* 541 F.Supp. at 524. The court finds the following passage from *Coleman* particularly appropriate:

The consequences of placing [the responsibility for finding out about deferral] on the farmer would be clearly unfair. The

lucky farmer whom the county agent told about the loan deferral could make a request but the other farmers not so lucky would be left in the dark. We cannot expect the ordinary farmer to spend ... extra hours in a federal depository, probably at least one [sic] 100 miles away from [the] farm, reading the United States Code and the Federal Register. This court must assume that the Congress acted with a basic sense of fairness and would not want the opportunity to request a loan deferral to rest on such happenstance.

*Coleman v. Block*, 562 F.Supp. 1353 at 1361 (D.N.D., 1983). This court agrees with that reasoning. In addition, since the court has not required the agency to promulgate rules and regulations under § 1981a, there is no guarantee that the standards would be published in the Federal Register and subject to the notice and comment provisions of 5 U.S.C. § 553(c). Thus, the court finds that personal notice of the opportunity for deferral and the standards to be applied must be given to the borrower. The court has examined the notices presently given and, for reasons similar to those discussed in *Curry*, 541 F.Supp. at 524, finds them inadequate.

█ The remaining question is when notice must be given. Plaintiffs request that they be provided with notice and the opportunity to obtain deferral relief before defendants take any action accelerating, foreclosing, repossessing, liquidating or in any other way proceeding against or depriving plaintiffs of property in which defendants have a security interest. The court agrees that notice before any of those actions is taken is necessary to accomplish the purpose of § 1981a.

█ In summary, the court finds that the agency must: formulate standards for § 1981a deferral; give personal notice of the availability of and standards governing deferral, such notice to precede any action against property in which defendants hold a security interest (with the exception of FmHA's continued receipt of its current share of the proceeds); accept applications for deferral and base a decision on the relevant statutory and agency specified standards; and render a written decision showing proper application of those standards.

The court will not pass upon a constitutional question, although properly presented, if there is an alternative ground upon which the case may be decided. *Ashwander v. TVA*, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936). Since the court has construed § 1981a to require that the agency implement a deferral program, it is unnecessary to pass upon the due process challenge to the agency's interpretation. The court therefore does not reach issues raised by that constitutional challenge.

### III. The Liquidation Process and Termination Decision

#### A. The Issues

In addition to challenging the Secretary's failure to implement § 1981a, plaintiffs allege that they are entitled to a due process hearing before an agency decision is made to terminate family living and farm operating expenses or to liquidate outstanding loans. While this challenge to the whole FmHA hearing and appeal process is somewhat garbled, plaintiffs basically allege existence of a property interest and claim that its deprivation without a prior hearing is a violation of due process.

Plaintiffs claim a property interest in the crop and livestock proceeds that their farm produced and/or find an "entitlement" to receive those proceeds as a government "benefit" created by the program similar to the welfare benefits of *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), and/or find a third property interest in the "expectancy" of receipt of farm proceeds created by FmHA's farm home plan and its regulations set forth at 7 C.F.R. 1924.57(c)(4) and 1962.17(c). Those regulations require, among other things, that when there is not enough income, "[p]riorities in distributing the income that will be available are as follows: (1) Pay necessary farm, home, and other expenses planned for payment by cash as incurred. (2) Prorate repayments on credit advanced for

necessary farm, home, and other operating expenses to FmHA and other creditors." 7 C.F.R. 1962.17(c).

Plaintiffs also contend that current hearing procedures are inadequate because the borrower is not notified or consulted before the agency makes a decision to liquidate, a decision which allegedly results in FmHA's impoundment of all proceeds except a $600 allowance and functionally puts a farmer out of business, and because the borrower allegedly does not receive a hearing before an impartial examiner.

Defendants deny that plaintiffs have a property interest in the proceeds and point to the signed agreements giving FmHA a security interest in those proceeds. Defendants also note that FmHA loans are not a form of government largesse similar to AFDC or disability benefits; unlike those programs, the farm loan program does not distribute living expenses and then suddenly terminate them. Thus, this case is distinguishable from *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (finding due process violation in denial of AFDC benefits) and its progeny. Instead, defendants contend, FmHA is merely a supervised lending program and the agency is in substantially the same position as a private lender. Furthermore, no property interest is created by the Farm Home Plan or the cited regulations. The Plan is only a projection of the farmer's anticipated receipts, not a guarantee that funds will be available. The regulations contemplate revisions when planned income does not materialize and those revisions will be made through consultation between the county supervisor and borrower. The release of income security is not required by 7 C.F.R. 1962.17(c); that section merely provides a priority of payment when it is released and such release is in the county supervisor's discretion. *See* "Defendants' Memorandum in Opposition to Motion for Preliminary Injunction," at 33–34; "Defendants' Supplemental Memorandum in Opposition to Preliminary Injunction," at 1–5.

Finally, even if FmHA borrowers have a constitutionally protected interest in continued participation in the program, defendants contend that the present appeal procedure meets the requirements of due process. Defendants note that foreclosure action will not be pursued until the appeal is terminated or resolved. Plaintiffs' assertion that a full trial-type hearing is required by due process is simply not the law, defendants maintain. *See* "Government's Responsive Memorandum Regarding Application of the APA" at 8–9 and cases cited. Defendants also allege that plaintiffs err when they indict the appeals procedure because of claimed partiality by the hearing officers. *Id.* at 6–7 (citing cases).

### B. Lack of a Protected Property Interest

■ The court is not convinced that plaintiffs have demonstrated a property interest protected by due process. The court has read the cases cited by both parties and does not intend to conduct a written analysis of them. Suffice it to say that, while the court agrees that FmHA has some characteristics of a social welfare agency, not every government program creates a due process right to a pretermination hearing. "Procedural due process guarantees do not protect all imaginable private interests affected by government action but only the liberty and property interests encompassed by the fifth amendment." *McCachren v. United States Dept. of Agr.*, 599 F.2d 655, 656 (5th Cir.1979). To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. The person must, instead, have a legitimate claim of entitlement to it. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The court agrees with defendant that this case is distinguishable from *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) and its progeny because the program does not distribute basic living expenses as its benefit. Program participants receive their benefit when they receive the loan and have no entitlement to

further loans or release of income security properly given as security for the loan. *See McCachren*, 599 F.2d at 657.

■ The court does not find a property interest in the proceeds created by the Farm Home Plan or the applicable regulations. Plaintiffs have seized upon one aspect of a continuing relationship between the County Supervisor and the borrower and upon one regulation among many to infer creation of a property interest. The regulations read in context, however, require that when the amount of income planned will not be received, the supervisor consult with the borrower and other lien creditors to determine how to use income that is or will be available. Release of income security is in the supervisor's discretion. The Farm and Home Plan is intended to be revised when conditions so require and to cast those budget projections as creating a constitutionally protected property interest in receipt of the stated amounts is to distort the program. Under plaintiffs' theory, borrowers would be entitled to a due process hearing every time farm income was insufficient to meet debts and expenses. Plaintiffs seem to say that anytime farm operating and family living expenses as projected on the plan could not be met, the government would have to release its security interest, despite the signed assignments and security agreements between the parties. Whenever milk prices dropped, for example, the government would release its security interest in the proceeds from the sale of the milk. Given the fluctuations that occur in the farm economy, the government's security agreement would be effectively abrogated. The practical problems of administering such a program would be staggering. This court cannot believe that such a result is either necessary or desirable.

■ Finally, the court does not find it necessary to decide whether plaintiffs have a property ownership interest in the proceeds protected by due process because, even if they do have such an interest, the § 1981a deferral hearing will adequately protect that interest. If farm income is lower than needed to pay family living, farm operating and debt expenses, it seems inevitable that the borrower will soon become delinquent. At that point, or before FmHA takes any adverse action against the property (other than continuing to take its assignment or share of the proceeds), the borrower can request a § 1981a deferral hearing and receive the opportunity to show a temporary inability to pay due to circumstances beyond the borrower's control.

The difficulty with plaintiffs' approach is that it assumes the borrower has a protected interest in continuing to farm indefinitely. Whenever expenses exceeded income, the borrower would be entitled to a due process hearing before FmHA could continue to get paid. It is unclear what plaintiffs expect would happen in that hearing; it is clear that the hearing would not be governed by the statutory safeguards found in § 1981a. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). According to the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976),

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional ... procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional ... procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903.

The private interest in release of proceeds that have been offered as security for a loan received and often assigned as well is small. The farmer still has the benefit of the loan and still possesses the farm. The court has found no property interest in being able to pay farm operating

and family living expenses before paying FmHA. The risk of an erroneous deprivation is slight since FmHA simply continues to take payment on the loan from the proceeds. The probable value of additional safeguards is low: plaintiffs do not explain how a hearing at this stage, as opposed to a later deferral hearing, would change their situation. Would the agency or a court perhaps order the release of income security and if so on what showing? Finally, the government's interest in protecting its loans is high and should not be jeopardized every time farm expenses exceed farm income. Requiring a hearing upon this frequently occurring event and in every case would create enormous fiscal and administrative burdens. There is no reason to believe that a § 1981a deferral hearing would not adequately protect any property interest plaintiffs might have in the proceeds.

### C. Adequacy of Current Procedures

Although the court has not found a property interest in the proceeds and therefore does not find a violation of due process when FmHA impounds all but $600 once the liquidation decision is made, the court is concerned about the apparent unfairness that permeates the liquidation stage of FmHA's procedures. The liquidation decision is made by FmHA, sometimes without consulting the borrower. The borrower is not informed that this decision is appealable until he or she receives notice of acceleration, some 60 days after the liquidation decision. During the interim, the borrower is subtly or overtly pressured into "voluntarily" liquidating. Many borrowers are uninformed of their alternatives and believe they have no choice but to liquidate. It seems to this court that, due process considerations [2] aside, basic notions of fairness dictate that FmHA inform the borrow-

er of the right to appeal when it informs him or her of the liquidation decision.

The court further finds that plaintiffs' challenge to the hearing officers' impartiality fails for two reasons. First, plaintiffs have not proven partiality and, as defendants note, plaintiffs must rebut the presumption of impartiality with evidence of actual prejudice. *See Schweiker v. McClure*, 456 U.S. 188, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982); *Withrow v. Larkin*, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). Second, the combination of adjudicatory and investigative functions, without more, does not violate due process. *Withrow v. Larkin*, 421 U.S. at 47–55, 95 S.Ct. at 1464–1468. Plaintiffs have ignored well established law on this question and have simply failed to carry their burden of proving a likelihood of success on the merits.

### IV. Conclusion

Upon the foregoing,

IT IS ORDERED That defendants JOHN R. BLOCK, Secretary of United States Department of Agriculture; CHARLES W. SHUMAN, Administrator of the Farmers Home Administration; RUSS BJORHUS, Minnesota State Director of Farmers Home Administration; NILES WESTBY, Minnesota Chief of Farmer Home Administration; BOB McDOWELL and GARY PENDER, District Directors of the Farmers Home Administration in Minnesota; CHRIS BARNIER, MERLE PLANTE, MICHAEL SMITH and CHARLES OFFERDAHL, County Supervisors of the Farmers Home Administration in Minnesota, and their agents, servants, employees and representatives, and all persons acting by, through, for or in concert with them are preliminarily enjoined from liquidating, accelerating, repossessing, foreclosing or in any other way proceeding against or depriving plaintiffs of property in which defendants have a security interest, other

---

**2.** The borrower clearly has a property interest in the farm. Any waiver of procedural due process rights concerning that property may be voluntary, intelligent and knowing. *See, e.g., D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972). Consenting to

the sale of the farm absent knowledge that the liquidation decision is appealable is hardly a knowing waiver of the procedural protections FmHA has so carefully provided at the acceleration and later stages preceding foreclosure.

than continuing to take their current share of the proceeds, until defendants implement a § 1981a deferral program, formulate standards for deferral, give all borrowers personal notice of the availability of and standards governing deferral, such notice to precede any adverse action against the property, accept applications for deferral, base a decision on the relevant statutory and agency specified standards, and provide a written decision showing proper application of those standards.

IT IS FURTHER ORDERED That plaintiffs' motion for a preliminary injunction be and the same hereby is in all other aspects respectfully denied.

IT IS FINALLY ORDERED That plaintiffs' motion for summary judgment be and the same hereby is in all things denied.

### PRELIMINARY INJUNCTION

Pursuant to this court's order dated October 19, 1983,

IT IS ORDERED That defendants JOHN R. BLOCK, Secretary of United States Department of Agriculture, CHARLES W. SHUMAN, Administrator of the Farmers Home Administration, RUSS BJORHUS, Minnesota State Director of Farmers Home Administration, NILES WESTBY, Minnesota Chief of Farmer Home Administration, BOB McDOWELL and GARY PENDER, District Directors of the Farmers Home Administration in Minnesota, CHRIS BARNIER, MERLE PLANTE, MICHAEL SMITH and CHARLES OFFERDAHL, County Supervisors of the Farmers Home Administration in Minnesota, and their agents, servants, employees and representatives, and all persons acting by, through, for or in concert with them are preliminarily enjoined from liquidating, accelerating, repossessing, foreclosing or in any other way proceeding against or depriving plaintiffs of property in which defendants have a security interest, other than continuing to take their current share of the proceeds, until defendants implement a § 1981a deferral program, formulate standards governing

deferral, give all borrowers personal notice of the availability of and standards governing deferral, such notice to precede any adverse action against the property, accept applications for deferral, base a decision on the relevant statutory and agency specified standards, and provide a written decision showing proper application of those standards.