Conrad P. MARCOTTE, Plaintiff,

v.

SECRETARY OF DEFENSE, et al., Defendants.

Civ. A. No. 76–309–C6.

United States District Court, D. Kansas.

Aug. 21, 1985.

Jim Lawing, Wichita, Kan., for plaintiff.

Stephen K. Lester, Asst. U.S. Atty., Wichita, Kan., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

THEIS, Judge.

This aged case, now over nine years old and the oldest active case on the Court's docket, was tried to the Court on May 28 and 29, 1985. The parties called only one

witness each and offered a total of forty exhibits. Since trial, both parties have submitted post-trial briefs although neither party has submitted proposed findings of fact and conclusions of law. Nevertheless, after hearing all of the testimony, weighing and evaluating the credibility of all the witnesses, examining the voluminous exhibits admitted at trial, and reviewing the post-trial briefs of the parties, the Court is now ready to enter judgment in this case pursuant to Rule 52 of the Federal Rules of Civil Procedure.

## I. FINDINGS OF FACT

1. The plaintiff, Conrad P. Marcotte, is a resident of Wichita, Kansas.

2. On October 14, 1958, Marcotte enlisted in the United States Air Force [Air Force] and on March 30, 1960 was promoted to the grade of Staff Sergeant or E–5.

3. Marcotte was given a commission in the Air Force Reserve as a Second Lieutenant on June 21, 1960.

4. On September 19, 1963, Marcotte accepted a commission in the Regular Air Force and was promoted to the grade of permanent First Lieutenant.

5. Marcotte was promoted to the grade of permanent Captain in the Regular Air Force on June 21, 1967.

6. While an officer in the Air Force, Marcotte, like every other officer, had officer effectiveness reports [OERs] prepared on his performance. The purpose of the OER is "to provide the Air Force with reliable information upon which to base personnel actions." Exhibit 7, Air Force Manual 36–10, at ¶ 5–1. Since 1963, officers are given a final rating on their OERs that consists of two numbers, such as 9–4. The first number represents the over-all evaluation and is a number between one (1), which represents an unsatisfactory rating, and nine (9), which represents an absolutely superior rating. The second number represents promotion potential and is a number between one (1), which means the rated officer "[d]oes not demonstrate a capability for promotion at this time," and four (4), which means "[o]utstanding growth potential based on demonstrated performance. Promote well ahead of contemporaries." Id., at ¶¶ 6–5, 6–6.

7. After June of 1962, Marcotte received the following OER ratings:

| Period Covered by OER | Date of OER | Rating |
| --- | --- | --- |
| June 1, 1962–Feb. 18, 1963 | Feb. 15, 1963 | 7–3 |
| Feb. 19, 1963–July 14, 1963 | July 14, 1963 | 8–3 |
| July 15, 1963–Dec. 1, 1963 | May 19, 1964 | 9–4 |
| Dec. 2, 1963–Oct. 29, 1964 | Oct. 29, 1964 | 7–2 |
| Oct. 30, 1964–Sept. 5, 1965 | Sept. 5, 1965 | 7–2 |
| Dec. 18, 1965–July 31, 1966 | July 31, 1966 | 6–2 |
| Aug. 1, 1966–Mar. 10, 1967 | Mar. 10, 1967 | 7–3 |
| Mar. 11, 1967–Aug. 31, 1967 | Aug. 31, 1967 | 7–3 |
| Sept. 1, 1967–Aug. 31, 1968 | Sept. 5, 1968 | 8–3 |
| Sept. 1, 1968–Dec. 19, 1968 | Dec. 20, 1968 | 8–3 |
| Dec. 20, 1968–Dec. 19, 1969 | Dec. 19, 1969 | 8–3 |
| Dec. 20, 1969–June 19, 1970 | June 19, 1970 | 9–4 |
| June 20, 1970–Apr. 21, 1971 | Apr. 21, 1971 | 9–4 |
| Apr. 22, 1971–Apr. 21, 1972 | Apr. 21, 1972 | 9–3 |
| Apr. 22, 1972–Apr. 21, 1973 | Apr. 21, 1973 | 9–3 |
| Apr. 22, 1973–Apr. 21, 1974 | Apr. 21, 1974 | 9–4 |
| Apr. 22, 1974–Oct. 18, 1974 | Oct. 18, 1974 | 9–4 |

8. In 1969, 1970, 1971, and 1972, Marcotte was "passed over" or not selected for promotion to temporary major by the Air Force Temporary Major Selection Boards for those years.

9. On August 20, 1973, Marcotte was passed over for promotion to permanent major by the Air Force Permanent Major Selection Board.

10. On September 17, 1973, Marcotte was passed over for the fifth time by the Air Force Temporary Major Selection Board.

11. On May 15, 1974, Marcotte made an application to the Office Personnel Records Review Board [Review Board] of the Air Force for action concerning several OERs he had received. The Review Board, composed solely of Air Force officers, is empowered to correct administrative errors on OER's or to void OERs entirely. Marcotte's application requested the following actions on the following OER's:

| Date of OER | Rating | Requested Action |
| --- | --- | --- |
| May 19, 1964 | 9–4 | Correct duty title and description, void indorsement and indorsing official's rating changes |
| Oct. 29, 1964 | 7–2 | Void the OER |
| Sept. 5, 1965 | 7–2 | Void the OER |
| July 31, 1966 | 6–2 | Void the OER |
| Aug. 31, 1967 | 7–3 | Void the OER |

*See* Ex. 14.

12. On May 20, 1974, Marcotte was recommended for decoration with the Air Force Commendation Medal by Colonel Leroy P. Brunner, Assistant Chief of Staff, Data Systems. This decoration was recommended because of Marcotte's exemplary performance and meritorious service from January 6, 1969 to April 30, 1974 at the March Strategic Air Command Automated Command Control System at March Air Force Base, California. The medal was approved on June 28, 1974 and awarded on July 1, 1974.

13. On July 8, 1974, Marcotte was passed over for the second time by the Air Force Permanent Major Selection Board. The fact that Marcotte had been recommended for and awarded the Air Force Commendation Medal was not reflected in the selection folder on Marcotte reviewed by the Air Force Permanent Major Selection Board.

14. On June 25, 1974, a recommendation that Marcotte be decorated with the Air Force Commendation Medal was initiated by the 22d Combat Support Group Commander. This recommendation covered the same time period as the recommendation for decoration by Colonel Brunner. On July 10, 1974, Colonel Robert A. Wickland removed this record endation from official channels and returned it to the 22d Combat Support Group Commander because a similar decoration for Marcotte covering the same time period had already been approved.

15. On July 11, 1974, the Review Board rendered a decision on Marcotte's May 15, 1974 request for action on five OERs. The Review Board granted Marcotte's request to make the duty title changes requested on the OER dated May 19, 1964 and to void that OER's indorsement and the indorsing official's rating changes. However, the Review Board denied all other relief requested by Marcotte as to the other four OERs.

16. On October 7, 1974, Marcotte was sent notice that he had been passed over for promotion to permanent major for the second time and that he would therefore be forced to resign his commission by March 31, 1975.

17. Faced with being forced to resign his commission, Marcotte made an application for correction of records to the Air Force Board for the Correction of Military Records [Corrections Board] on October 14, 1974. The Corrections Board is a board composed of Air Force civilians empowered to correct any Air Force record when necessary to correct or remedy an injustice. Marcotte requested that the Corrections Board void the four OER's dated October 29, 1964, September 5, 1965, July 31, 1966, and August 31, 1967. Marcotte also asked the Corrections Board to promote him retroactively to temporary major as of December 21, 1972 and to permanent major as of June 21, 1974.

18. On October 24, 1974, Marcotte made an action request to the Inspector General of the Air Force [Inspector General]. The

Inspector General is empowered to investigate allegations that Air Force procedures and regulations are being violated. Marcotte alleged that the failure to include notice of the recommendation and award of the Air Force Commendation Medal in his selection folder reviewed by the Air Force Permanent Major Selection Board violated Air Force regulations. Marcotte also alleged that Colonel Wicklund had no authority to remove the second recommendation for the Air Force Commendation Medal from official channels and that such conduct violated Air Force regulations.

19. On November 21, 1974, Captain Jean M. Kibbey of the Directorate of Personnel Program Actions of the Air Force wrote a memorandum to the Corrections Board explaining the basis for the Review Board's refusal to grant Marcotte's request to void the four OERs dated October 29, 1964, September 5, 1965, July 31, 1966, and August 31, 1967. On December 17, 1974, Colonel Derwin L. Bohne of the Directorate of Personnel Program Actions signed a similar memorandum to the Corrections Board that had been written by Lillian Kinsala. Both memoranda, referred to by the parties as "staff advisories," recommended that the Corrections Board deny Marcotte's application.

20. No specific request was made by the Corrections Board to the Review Board for its opinions and views on the merits of Marcotte's appeal. However, the staff advisories were prepared in response to a standing request for such information, evidenced by a memorandum from James P. Goode, Deputy Assistant Secretary for Personnel Policy, Department of the Air Force dated May 22, 1973. While the memorandum uses as an example appeals to the Corrections Board involving airmen, not officers, it is clear that the request for "review, comment or opinion, and recommendation" applies to all matters appealed to the Corrections Board. See Ex. 38, p. 3.

21. The Inspector General replied on January 7, 1975 to Marcotte's October 24, 1974 action request. The Inspector General stated that Colonel Wickland's removal of the second Air Force Commendation Medal recommendation from official channels did not violate Air Force regulations since two medals or awards could not be given for the same period of service. The Inspector General also stated that the Corrections Board, in determining whether to promote Marcotte to the grades of temporary or permanent major, was considering the citation accompanying the Air Force Commendation Medal which had been awarded to Marcotte. No further action was taken by the Inspector General on Marcotte's complaint.

22. On March 12, 1975, the Corrections Board found that Marcotte had "fail[ed] to establish a showing of probable error or injustice...." Ex. 2. The Corrections Board therefore denied all relief requested.

23. On March 30, 1975, Marcotte resigned his commission in the Regular Air Force. On March 31, 1975, Marcotte reenlisted in the Regular Air Force and was given the grade of sergeant or E–4.

24. On December 22, 1975, Marcotte wrote a letter to Keith G. Sebeluis, who was at that time a member of the U.S. House of Representatives representing the First District of the State of Kansas. In this letter, Marcotte explained the problems he was facing with the Air Force and outlined his appeal efforts.

25. On February 12, 1976, Rep. Sebelius wrote a letter to the Secretary of the Air Force inquiring about what was being done with regard to Marcotte's appeals and included as an attachment, a copy of Marcotte's letter to Sebelius. The letter from Sebelius was answered by a letter from David P. Taylor, Assistant Secretary of the Air Force for Manpower and Reserve Affairs. This letter explained that Marcotte's appeals had been considered but that no error or injustice had been demonstrated and, therefore, Marcotte's requested relief was denied. A copy of this letter was forwarded by Rep. Sebelius to Marcotte. Marcotte also sent a letter to Robert Dole, a U.S. Senator from the state of Kansas, similar to the letter he had sent to Rep. Sebelius. The letter to Sen. Dole was like-

wise forwarded to the Air Force which, in turn, replied and defended to Sen. Dole the action taken by the Air Force with respect to Marcotte.

26. On March 21, 1976, Marcotte filed a second action request with the Inspector General. This action request alleged numerous violations of Air Force regulations arising primarily out of consideration of the staff advisories by the Corrections Board when ruling upon Marcotte's October 14, 1974 application for the correction of records. Marcotte also complained that the letter from Taylor to Rep. Sebelius quoted verbatim from the allegedly illegal staff advisories.

27. On June 4, 1976, the Inspector General sent a memorandum to the Corrections Board with an attached copy of Marcotte's second Inspector General action request. The memorandum "[r]equest[ed] information upon which to base a reply." Ex. 36.

28. In response to the Inspector General's request, Major Charles R. Price prepared a document entitled "SUBJECT: Chronology of Events/Communiques—Sgt Marcotte." Ex. 28. This three-page document, referred to by the parties as "the talking paper," is a chronology of Marcotte's attempts to have his OERs voided and to get promoted to major. It also included references to Marcotte's congressional correspondence and the Air Force's replies to the inquires by Rep. Sebelius and Sen. Dole.

29. The Court finds that the talking paper was reasonably accurate, complete, and relevant and was necessary to enable the Inspector General to respond properly to Marcotte's action request. Marcotte's primary complaint concerning the talking paper is that the talking paper, as a summary of information gleaned from his records, is necessarily not as complete as the records themselves. Merely stating this truism, however, falls far short of demonstrating that the information contained in the talking paper is not reasonably complete. Marcotte failed to point to any substantial omission or inaccuracy in the talking papers. The Court finds the talking paper to contain all of the material information necessary to respond to the Inspector General's information request in a reasonably accurate fashion.

Marcotte also complains that some of the information in the talking paper, primarily the mention of his congressional correspondence, is irrelevant. Yet once again, Marcotte failed to demonstrate the irrelevance of any statement in the talking paper. The discussion in the talking paper about Marcotte's congressional correspondence was clearly prompted by Marcotte's action request to the Inspector General. In that action request, Marcotte alleged improprieties in the Air Force's response to the inquiries made by Rep. Sebelius and Sen. Dole at Marcotte's insistence. The mention of Marcotte's congressional correspondence was necessary to put the facts underlying Marcotte's allegations in context and to enable the Inspector General to frame an adequate response.

30. On June 24, 1976, the Corrections Board responded to the Inspector General's request for information by way of a memorandum signed by Colonel R.W. Haganer, Director of Personnel Program Actions. The memorandum responded in detail to Marcotte's allegations of violations by the Corrections Board of Air Force regulations and defended the use and accuracy of the staff advisories. Accompanying this memorandum was a copy of the talking paper prepared by Major Price.

31. On July 6, 1976, the Inspector General responded to Marcotte's second action request challenging the legality of the staff advisories. The Inspector General concluded that the staff advisories were neither improper nor inaccurate.

32. Marcotte filed this lawsuit on July 9, 1976.

33. On March 20, 1978, Marcotte filed a second request with the Review Board, again requesting that the OER dated October 29, 1964 be voided. In support of this request, Marcotte included letters of recommendation by Daniel M. Bussiere, a retired Air Force major who had been Mar-

cotte's direct supervisor from January 10, 1964 until April 9, 1964, a period of time encompassed by the review period of the challenged OER.

34. On April 11, 1978, the Review Board found that Marcotte had failed to demonstrate the invalidity or inaccuracy of the challenged OER by a preponderance of the evidence and therefore denied Marcotte's request for relief.

35. On May 26, 1978, Marcotte filed a second application for relief with the Corrections Board. In this application, Marcotte requested that he be awarded two Air Force medals, that the four previously challenged OER's be voided, that the resignation of his commission be voided, that his previous pass-overs by the Air Force Temporary Major and Permanent Major Selection Boards be set aside, that he be promoted to temporary major, and that he be considered for promotion to permanent major.

36. On June 21, 1978, Frank S. Dispenza acknowledged receipt of Marcotte's second application for relief by the Corrections Board and stated that the application would be given consideration.

37. On June 28, 1978, Dispenza wrote another letter to Marcotte explaining why no written statement had been prepared of the reasons for the Corrections Board's denial of Marcotte's first application for relief to the Corrections Board. The letter further stated that:

> It is my opinion that you do not believe the Board had given you a fair consideration. I, and members of my staff, have counselled you at great length on the procedures of the Board.
>
> By this letter I recommend to you that you seek further redress of your grievances with the civil courts. Maybe they can satisfy your bitterness. It appears that no matter what the Air Force says to you, you refuse to believe it.
>
> Please let me know of your future plans within the next 60 days.

Ex. 4, p. 2.

38. On August 8, 1978, Dispenza wrote a letter advising Marcotte that his second application to the Corrections Board was being filed without action.

39. On August 31, 1978, Marcotte wrote a letter to the Corrections Board asking that his second application to the Corrections Board be given consideration. This letter was never answered and his second application to the Corrections Board remains filed without action.

40. Marcotte requests that this Court find that the talking paper was a violation of the Privacy Act, 5 U.S.C. § 552a, that the action of the Corrections Board is arbitrary and capricious, and that upon his reenlistment in the Air Force after resigning his commission, he was entitled to the rank of Staff Sergeant or E–5. Marcotte asks for damages resulting from the Privacy Act violation and asks that the Corrections Board be ordered to correct his OERs and consider whether he should be retroactively promoted to major.

## II. CONCLUSIONS OF LAW

1. The Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1331 and, since plaintiff resides in this district, venue is proper in this district under 28 U.S.C. § 1391(e)(4).

2. Marcotte asserts that the talking paper prepared by Major Price was a record maintained in violation of 5 U.S.C. § 552a(e)(5) because it is inaccurate, incomplete, and irrelevant. The Privacy Act does not require that perfect records be maintained; rather, records must be maintained only "with such accuracy, relevance, timeliness, and completeness as is *reasonably necessary* to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5) (emphasis added). *See also Edison v. Department of the Army*, 672 F.2d 840 (11th Cir.1982). The Court has found that the information in the talking paper was reasonably accurate, complete and relevant. The Court has previously rejected Marcotte's argument that the maintenance of records of his congressional correspondence violated his First Amendment rights. *See* Dk. No. 61. Hence, the

creation and maintenance of such a document is not a violation of the Privacy Act.

■ 3. The Inspector General and the Corrections Board are separate entities but are both encompassed within a single agency for the purposes of the Privacy Act. "Agency" is defined as "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C. § 552(e) (as adopted by 5 U.S.C. § 552a(a)(1)). The Department of the Air Force is a single agency for purposes of the Privacy Act because it is a military department, although it is subdivided into separate entities. *See* 32 C.F.R. § 806.1 to 806.18 (regulations implementing the Privacy Act and Freedom of Information Act for entire Department of the Air Force). *Cf. Rowe v. State of Tennessee,* 431 F.Supp. 1257, 1264 (E.D.Tenn.1977) (Department of the Air Force is the proper party defendant in action brought under the Privacy Act). *See generally* Anno., 57 A.L.R.Fed. 295 (1982). Thus, the agency that maintained the talking paper as a record is, for purposes of the Privacy Act, the Department of the Air Force.

■ 4. Disclosure of the talking paper to the Inspector General by the Corrections Board did not violate the Privacy Act because such disclosure falls within the scope of 5 U.S.C. § 522a(b)(1). That provision states that:

No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless the disclosure of the record would be—

(1) to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties....

5 U.S.C. § 552a(b)(1). The Inspector General is an officer or employee of the agency that maintained the record, the Department of the Air Force. The Court has held that the Inspector General had a need for the talking paper in order to adequately perform his duties, responding to Marcotte's action request challenging the propriety of the staff advisories. The disclosure of the talking paper to the Inspector General without the prior written consent of Marcotte did not violate the Privacy Act. Therefore, Marcotte's claims under the Privacy Act are without merit.

■ 5. The standard for reviewing action by the Corrections Board is very strict:

Once a plaintiff has sought relief from the Corrections Board, such plaintiff is bound by that board's determination unless he can meet the difficult standard of proof that the Corrections Board's decision was illegal because it was arbitrary, or capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced.... *See, e.g., Skinner v. United States,* [594 F.2d 824 (Ct.Cl. 1979)]; *Boyd v. United States,* 207 Ct.Cl. 1 (1975), *cert. denied* 424 U.S. 911 [96 S.Ct. 1106, 47 L.Ed.2d 314] (1976); *Cooper v. United States,* 203 Ct.Cl. 300, 304 (1973).

*Sanders v. United States,* 594 F.2d 804, 811 (Ct.Cl.1979). Thus, Marcotte must meet a heavy burden in order to demonstrate that the action of the Corrections Board should be reversed.

■ 6. The conduct of the Corrections Board in filing Marcotte's second application without action is arbitrary and capricious and shall be overturned. Marcotte made very clear to the Corrections Board his desire that his application be considered on its merits. The Corrections Board, by failing to consider or address the merits of Marcotte's application, failed to exercise its discretion. A decision of the Corrections Board is given great latitude because it is an exercise of discretion assigned to the Corrections Board by Con-

gress. *See* 10 U.S.C. § 1552(a). However, the failure to decide a question when the question has been properly presented for decision is arbitrary and capricious. *See, e.g., Matzke v. Block,* 564 F.Supp. 1157 (D.Kan.1983) (failure to enact standards and regulations found an abuse of discretion although the decision on what specific standards to enact and their application is purely discretionary). Therefore, the Court shall direct the Corrections Board to consider Marcotte's second application and reach a decision on its merits.

7. Marcotte has also requested that this Court order the Corrections Board to void the four OERs that he challenges and to set aside his pass overs by the temporary and permanent major selection boards. This the Court cannot do. The refusal by the Corrections Board to void the four challenged OERs and to set aside the pass overs must be upheld unless arbitrary or capricious. *Sanders,* 594 F.2d at 819. The Court should refrain from interfering with the inherently subjective process of officers evaluating other officers "unless there is clear and convincing evidence of factors adversely affecting the ratings which had *no business being in the rating process." Guy v. United States,* 608 F.2d 867, 871 (Ct.Cl.1979) (emphasis in original) (citations omitted). No such evidence was presented by Marcotte, either before the Corrections Board or before this Court. The Corrections Board considered the evidence in the files as well as the evidence submitted by Marcotte with his first application and determined that no relief was warranted. Such a decision is not so unsupported by the evidence as to be arbitrary or capricious, and this Court shall not disturb it.

8. Marcotte has also asked the Court to find that the use of staff advisories by the Corrections Board in this case is a violation of Air Force Regulation 31–3 (codified at 32 C.F.R. § 865). That regulation provides, in pertinent part:

*At the request of the Board,* the appropriate staff office will assemble the original or certified copies of all available military records pertinent to the corrective action requested. Such records together with the application and all supporting papers will be transmitted to the Board with a certification from the staff office designated by by the Chief of Staff, USAF, that the corrective action requested cannot be granted through administrative action by any staff office. The facilities of all staff offices will be made available as required to assist the Board in accomplishing its function. *Upon request of the Board,* personnel of the Air Staff will be made available for presentation before the Board of matters within their functional areas and which relate to the issues under consideration.

32 C.F.R. § 865.16 (emphasis added). Marcotte concedes that if the Corrections Board had made a specific request for the staff advisories in his case, their submission and consideration would have been proper. However, since no specific request for staff advisories was made in his case, Marcotte asserts that their submission to the Corrections Board violates Air Force regulations.

The defendants contend that a standing request for such advisories had been made by the Corrections Board and that such a standing request is not prohibited by regulations. The Court agrees. Nothing in Air Force Regulation 31–3 requires that a separate request for staff advisories be made in each individual case, nor does that regulation prohibit the use of a standing request for such information. There was no evidence that the Corrections Board uniformly adopts the recommendations contained in the staff advisories so as to amount to a *de facto* delegation of its statutory duties. Instead the memorandum from Goode states that such recommendations will only be considered as "expert opinions." Ex. 38, p. 4. The Court finds that the use of the staff advisories by the Corrections Board in the consideration of Marcotte's first application was neither a violation of Air Force regulations nor contrary to the spirit behind the establishment of the Corrections Board.

9. Marcotte has also asked that this Court require the Corrections Board to grant him a hearing on his second application. This, again, the Court cannot do because the decision to grant a hearing is discretionary with the Corrections Board. *See Knehans v. Callaway*, 403 F.Supp. 290, 297 (D.D.C.1975); *see also* 32 C.F.R. § 865.7(a).

10. Similarly, the Court cannot order the Corrections Board to convene a relook board to determine whether Marcotte would have been promoted by the earlier selection boards. The Court agrees that the use of a relook board may be indicated in this case. A relook board is a reconstituted selection board of Air Force officers convened for the purpose of looking at a corrected selection folder of a candidate for promotion and determining whether, on the basis of that corrected record, the candidate should have been promoted originally. *See generally Dilley v. Alexander*, 603 F.2d 914, 919 (D.C.Cir. 1979). The Court finds it highly significant that Marcotte had been recommended for the Air Force Commendation Medal by two different commanders, *see* Findings of Fact, *supra*, # 12–14, but that Marcotte's selection folder failed to reflect either of these recommendations or the fact that one of the recommendations had been approved and Marcotte awarded the Air Force Commendation Medal. Since no evidence was offered at trial as to the significance and importance of the Air Force Commendation Medal or as to the difficulty of attaining it, the Court cannot hold as a matter of law that its presence in Marcotte's selection folder would have caused him to be promoted. Nonetheless, it is an apparently important addition to Marcotte's selection folder and should be given careful and appropriate consideration by those in the best position to do so properly, an Air Force selection board. The Court would strongly recommend, therefore, that the Corrections Board convene a relook board in this case. However, while the use of a relook board in this case may be adviseable, the final decision of whether to convene a relook board is committed to the sound discretion of the

Corrections Board. *See Jones v. Alexander*, 609 F.2d 778, 783 (5th Cir.1980).

11. The issue of at what rank Marcotte was entitled to reenlist is solely one of statutory interpretation. The pertinent statute is 10 U.S.C. § 8258 which reads:

Any former enlisted member of the Regular Air Force *who has served on active duty as a reserve officer of the Air Force,* or who was discharged as an enlisted member to accept *a temporary appointment as an officer of the Air Force,* is entitled to be reenlisted in the Regular Air Force in the enlisted grade that he held before his service as an officer, without loss of seniority or credit for service, regardless of the existence of a vacancy in his grade or of a physical disability incurred or having its inception in line of duty, if (1) his service as an officer is terminated by an honorable discharge or he is relieved from active duty for a purpose other than to await appellate review of a sentence that includes dismissal or dishonorable discharge, and (2) *he applies for reenlistment within six months* (or such other period as the Secretary of the Air Force prescribes for exceptional circumstances) *after termination of that service.*

(emphasis added). The parties have cited no cases, and the Court's research has disclosed none, which discuss whether § 8258 grants reenlistment rights to a person who was a former enlisted member of the Regular Air Force who served on active duty as an officer in the Air Force Reserves but then was given a commission and served on active duty as an officer in the Regular Air Force. However, another virtually identical statute has been interpreted with respect to this issue. The U.S. Court of Appeals for the District of Columbia Circuit has interpreted 10 U.S.C. § 3258 as not granting reenlistment rights to a former enlisted man in the Army who accepts a commission as an officer first in the Army Reserves and later in the Regular Army. *Perry v. Commanding Officer, Headquarters,* 547 F.2d 662 (1976). That statute, § 3258, is identical to § 8258 except

that it substitutes the word "Army" wherever the words "Air Force" appear in § 8258. *See* Letter from Wilber M. Brucher, Secretary of the Army to Honorable Sam Rayburn, Speaker of the House of Representatives, January 15, 1957, 1958 U.S.Code & Adm.News 3298 ("Title 10, United States Code, sections 8258 and 8448(d) contain provisions which are identical to those pertaining to Army personnel in sections 3258 and 3448(d) respectively."). *Compare* § 3258 *with* § 8258. Indeed, § 3258 and § 8258 were both enacted by Congress as part of the same statute but were merely codified in different places. *See* July 14, 1939, ch. 267, § 1; *see also* Pub.L. 85–603, §§ 1(1) and (3), 72 Stat. 526.

In *Perry,* the Court of Appeals carefully examined the legislative history of § 3258 including its predecessor statutes. After this thorough analysis, which this Court need not repeat here, that court stated:

> The statute [§ 3258] grants reenlistment rights to former enlisted men on the termination of their service as officers on temporary active duty with Reserve components but denies the same reenlistment rights to former enlisted men who accept Reserve commissions and subsequestly are commissioned as officers in the Regular Army—even though the latter may be the better qualified men. In doing so, the statute distinguishes between *temporary* service with Reserve components and *permanent* service with Regular Army components.

*Perry,* 547 F.2d, at 672 (emphasis in original).

 The Court finds the decision in Perry to be thoughtful and persuasive. The Court further finds that the interpretations given to § 3258 are very helpful and enlightening since the two statutes are so similar. *See, e.g., Northcross v. Bd. of Education of Memphis City Schools,* 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973). This is especially true in this case where the interpretation given to § 3258 by the D.C. Court of Appeals was largely based upon its legislative history which is shared with § 8258. The Court therefore holds that Marcotte has no reenlistment rights under § 8258 because those rights extend to former enlisted men only six months from the termination of their temporary service with the Reserve Air Force, not their permanent service with the Regular Air Force. Marcotte's right to reenlist under § 8258 thus expired six months after he accepted a commission in the Regular Air Force on September 19, 1963.

## III. FINAL JUDGMENT

1. Judgment shall be entered in favor of the defendants on Marcotte's claim under the Privacy Act.

2. Judgment shall be entered in favor of Marcotte on his claim that the Corrections Board acted arbitrarily and capriciously. The Corrections Board is ordered to give normal consideration to and either grant or deny on its merits Marcotte's application for the corrections of records dated May 26, 1978. The Corrections Board shall give Marcotte a reasonable time in which to submit any additional evidence in support of his application which he may have found in the seven years since he filed his application. The Corrections Board need not grant a hearing if, in the sound exercise of its discretion, it determines that a hearing is not necessary.

3. Judgment shall be entered in favor of the defendants on Marcotte's claim of reenlistment rights under 10 U.S.C. § 8258.

4. The clerk is hereby directed to prepare a journal entry of judgment in accord with the above findings or fact and conclusions of law and submit it for this Court's approval pursuant to Rule 58 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.